IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Baumann, :
                Petitioner :
                               :
              v. :
                               :
Workers' Compensation Appeal :
Board (Kellogg Company), : No. 2603 C.D. 2015
              Respondent : Submitted: June 17, 2016


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
JUDGE COVEY                        FILED: September 23, 2016


        David Baumann (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) November 20, 2015 order affirming the Workers' Compensation Judge's (WCJ) decision on remand granting Kellogg Company's (Employer) Petition to Terminate Claimant's WC benefits (2010 Termination Petition), and granting Claimant's Petition for Penalties (Penalty Petition). The issues before this Court are: (1) whether the Board erred by affirming the WCJ's decision granting Employer's 2010 Termination Petition; and (2) whether the Board erred by affirming the WCJ's decision granting Claimant's Penalty Petition, but awarding a 0% penalty. After review, we affirm.

        On May 5, 2007, Claimant suffered a right shoulder and upper back strain as a result of a car accident that occurred during the course and scope of his employment as a sales representative for Employer. Employer issued a notice of compensation payable (NCP) and paid Claimant WC benefits. By August 28, 2008 WCJ order, Claimant's injury description was amended by stipulation to include a right C-6 radiculopathy.

On March 16, 2009, Employer filed a petition to terminate Claimant's WC benefits (2009 Termination Petition). Hearings were held before WCJ Bruce Doman (WCJ Doman), at which Employer offered the June 2, 2009 deposition of neurologist Richard Bennett, M.D. (Dr. Bennett) who conducted a January 7, 2009 independent medical evaluation (IME), and Claimant testified and offered the September 15, 2009 deposition of orthopedic surgeon Norman Stempler, M.D. (Dr. Stempler). By November 23, 2009 decision, WCJ Doman denied the 2009 Termination Petition. *See* Certified Record (C.R.), Claimant Ex. C-2.

On December 2, 2009, Employer filed a petition to modify Claimant's WC disability benefits from full to partial (Modification Petition), based upon the results of an October 26, 2009 IME. Claimant denied the allegations in the Modification Petition.

On March 11, 2010, Claimant filed the Penalty Petition, wherein he averred that Employer violated the WC Act (Act)[1] when it notified Claimant's surgeon that Employer would not pay for Claimant's March 18, 2010 right shoulder surgery, which resulted in the surgery's cancellation. Employer denied the allegations in the Penalty Petition.

On May 4, 2010, Claimant underwent a second IME conducted by Dr. Bennett, following which Dr. Bennett opined that Claimant had fully recovered from his May 5, 2007 work accident and could return to full-duty work without restriction. On July 21, 2010, Employer filed the 2010 Termination Petition based upon Dr. Bennett's conclusion.

Hearings were conducted before WCJ Tina Rago (WCJ Rago)[2] relative to Employer's Modification and Termination Petitions, and Claimant's Penalty

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1 - 1041.4, 2501-2708.

[2] The Modification Petition was initially assigned to WCJ Doman, but was re-assigned to WCJ Thomas Devlin (WCJ Devlin) when Claimant relocated to Philadelphia. The Modification,

Petition. At the WCJ hearings, Employer presented Dr. Bennett's November 2, 2010 deposition wherein Dr. Bennett testified that, as part of Claimant's May 4, 2010 IME, he reviewed Claimant's electromyogram (EMG) and magnetic resonance imaging (MRI) history, and his 2009 and 2010 medical records from Dr. Steven Cohen (Dr. Cohen), Craig Rubenstein M.D. (Dr. Rubenstein) and others. *See* Supplemental Reproduced Record (S.R.R.) at 101b, 126b-130b; Reproduced Record (R.R.) at 2a-6a. Dr. Bennett reported that Dr. Cohen's records paralleled his in terms of Claimant's pathology, Dr. Cohen recommended surgery only as a last resort, Claimant's July 14, 2009 right shoulder MRI appeared normal, and his July 13, 2009 cervical spine MRI reflected only minor bulges and degenerative changes similar to Claimant's June 4, 2007 MRI. *See* S.R.R. at 104b-105b. Dr. Bennett declared that Claimant's May 14 and August 25, 2009 EMG report results were non-specific, non-diagnostic and not consistent with multi-level cervical radiculopathy. *See* S.R.R. at 105b, 109b. Dr. Bennett also observed that Dr. Rubenstein did not feel that Claimant was a good candidate for right shoulder surgery, but rather referred him to a sports specialist. *See* S.R.R. at 105b, 107b.

Dr. Bennett recalled that during the May 4, 2010 IME, Claimant complained of persistent right shoulder clicking with pain and intermittent numbness down his arm and into his fingers. *See* S.R.R. at 101b-102b. Dr. Bennett described, based upon Claimant's physical exam, that Claimant did not demonstrate obvious muscle wasting, weakness or scapula winging, he had no right arm or wrist muscle atrophy or weakness or spasms and Claimant had normal wrist flexion and upper arm strength. *See* S.R.R. at 102b. Dr. Bennett opined within a reasonable degree of medical certainty that, based upon his review of Claimant's history, records and his physical examination, Claimant was "fully recovered from all aspects of [his work

Termination and Penalty Petitions were ultimately assigned to WCJ Rago upon WCJ Devlin's retirement.

3

accident]" (S.R.R. at 105b-106b), did not require any further treatment, interventional therapy or surgery, and could return to his pre-injury job "without any restrictions whatsoever." S.R.R. at 106b.

Claimant offered his April 29, 2010 deposition testimony, and also appeared at the November 22, 2010 WCJ hearing. Claimant testified that although he continues to see Dr. Stempler approximately every four to eight weeks, he has not undergone physical therapy since 2007, he has not treated with a neurologist since the beginning of 2009, he has not received any epidural injections, and Dr. Stempler has not prescribed medications for him since the end of 2009. *See* S.R.R. at 9b, 11b-13b, 17b, 22b, 47b, 77b, 84b-85b. Claimant stated that he sees his family physician Jonathan Levin, M.D. (Dr. Levin), approximately every two months just to talk and, although Dr. Levin has not treated him for work-related injuries, he has prescribed Vicodin and Xanax for him. *See* S.R.R. at 8b, 12b-14b, 75b, 77b. Claimant added at the November 2010 hearing that his counsel referred him to pain specialist Daphne Golding, M.D. (Dr. Golding), with whom he treats approximately every 3 weeks, and who has prescribed medications including Xanax, Diazepam, Phenazepam, Morphine and Oxycodone. *See* S.R.R. at 75b, 77b, 84b.

Claimant reported that he has limited rotation and range in his right shoulder, and he experiences a painful popping when he moves it. *See* S.R.R. at 27b. He explained that a thoracic nerve in his right shoulder makes it "feel[] like it's on fire all the time." S.R.R. at 28b. Claimant related that his neck pain radiates into his shoulder, which causes numbness in spots in his right arm and into his right thumb, ring and index fingers, and also results in sleeping difficulties. *See* S.R.R. at 28b-29b, 78b. He contends that his pain has worsened over the year leading to his deposition, particularly since the beginning of December 2009. *See* S.R.R. at 53b-54b, 79b. Claimant also declared that his injuries have caused him to suffer

4

depression[3] and anxiety, which has led to him becoming a recluse. *See* S.R.R. at 30b, 36b, 40b, 42b, 80b. He pronounced that he has not worked since 2007 and, although he initially asked Employer to give him light-duty work until he recovered, he no longer thinks he could work in any capacity due to his pain and medications, and sitting makes him stiff, which further aggravates his symptoms. *See* S.R.R. at 31b-33b, 79b.

Claimant testified that he stretches, reads, watches movies, cares for his dogs and occasionally uses his laptop computer or his PlayStation 3 to pass the time. *See* S.R.R. at 38b-39b, 80b. He disclosed that he was a very good guitar player who used to play in bands and, although he sang with a couple of bands and did some studio track work after the accident, he did not perform in 2009 or 2010. *See* S.R.R. at 39b-40b. Claimant revealed during his April 2010 deposition that he planned to go back to community college to earn a nursing degree, and completed applications in February 2010 for entry in fall 2010, but had not yet been accepted. *See* S.R.R. at 45b. However, he expressed concern that college may not be possible due to his anxiety, having to sit in class for more than an hour at a time, and carrying a book bag. *See* S.R.R. at 51b-53b. At the November 2010 hearing, Claimant revealed that he did not follow through with his school plan because he did not think he could carry a backpack. *See* S.R.R. at 87b-88b.

Claimant recounted that he vacationed at the beach with his family in 2008, but did not take any trips in 2009 or early 2010. *See* S.R.R. at 51b. A few weeks before his deposition, he visited a friend in Los Angeles and, while there, got a tattoo on his right wrist. *See* S.R.R. at 47b. Claimant admitted that he also got a tattoo on his right arm within the year after his work accident during approximately

---

[3] Claimant admitted that he suffered from and was prescribed medication for depression before his work accident. *See* S.R.R. at 41b.

seven 1-hour sessions.  *See* S.R.R. at 47b-49b.  Claimant represented that he did not feel the needles when he got his right arm tattoos.  *See* S.R.R. at 50b.

Claimant also presented Dr. Stempler's July 6, 2010 deposition, wherein Dr. Stempler testified that he initially treated Claimant on July 31, 2007 and diagnosed Claimant with degenerative disc disease and ongoing right cervical radiculopathy overlapping with a chronic peritendonitis bursitis with right shoulder impingement related to his May 5, 2007 work accident.  Dr. Stempler recalled treating Claimant with medication, therapy, exercise and palliative treatment and, ultimately, referred him to the Rothman Orthopaedic Institute for a surgery consultation.  Dr. Stempler opined that Claimant is "as good as he's going to get" without surgery.  Certified Record, Dr. Stempler 7/6/10 Notes of Testimony (Stempler N.T.) at 12.

Dr. Stempler recalled that Claimant had a May 2009 EMG/nerve conduction study that revealed his right C-6 and bilateral C-5 radiculopathy, a July 14, 2009 right shoulder MRI which demonstrated tendon thickening from chronic inflammation and impingement, and a July 13, 2009 cervical spine MRI that reflected some degenerative changes.  Dr. Stempler described that "there's episodes of acute recurrence of symptoms where [Claimant] can't use the extremity at all."  Stempler N.T. at 17.  Dr. Stempler admitted that Claimant did not receive physical therapy after 2008, he did not receive any epidural injections in 2009, and that he did not deem Claimant a surgical candidate until the end of 2009.  Dr. Stempler disclosed that he has prescribed Tylenol with codeine for Claimant's pain and Klonopin for anxiety, plus recommended home exercises.  Dr. Stempler reported that Claimant has very limited use of his right shoulder that has "cost him a career as a professional musician."  Stempler N.T. at 11.  When asked regarding Claimant's ability to work, Dr. Stempler stated:

6

Well, he is just so uncomfortable with the use of his dominant extremities. It's very difficult for him to really perform anything, but his exercise and take his medication in which often times does make him drowsy. So, it's probably not wise for him to continue [] doing anything until his shoulder situation is resolved or improved at least.

Stempler N.T. at 22-23.

By December 13, 2011 decision, WCJ Rago deemed Claimant's testimony of ongoing shoulder pain not credible because he had not treated for it since December 2009, his activities included playing guitar and video games, and he was able to get a tattoo on his right arm. WCJ Rago found Dr. Bennett's testimony of Claimant's full recovery credible because he examined Claimant on two occasions, and because Dr. Bennett's opinion was consistent with the opinions of Claimant's other doctors, his diagnostic studies and his activity level. Accordingly, WCJ Rago granted Employer's 2010 Termination Petition and dismissed Employer's Modification Petition as moot. WCJ Rago also granted Claimant's Penalty Petition because Employer violated the Act by failing to pay for Claimant's shoulder surgery without the benefit of an opposing medical opinion or Dr. Bennett's May 4, 2010 evaluation. However, WCJ Rago imposed a 0% penalty without stating the basis for her decision.

Claimant appealed from WCJ Rago's decision to the Board. By January 17, 2014 order, the Board remanded the matter for WCJ Rago to determine whether Employer met its burden of proving that Claimant's medical condition had changed since the 2009 Termination Petition was adjudicated, to reconsider the 2010 Termination Petition, and to render findings regarding why she imposed a 0% penalty.

By December 10, 2014 decision after remand, WCJ Rago again granted Employer's 2010 Termination Petition and Claimant's Penalty Petition, but declared that under the facts of this case, Employer's failure to pay for Claimant's shoulder

7

surgery was not sufficiently significant to warrant more than a 0% penalty. Claimant appealed to the Board which, on November 20, 2015, affirmed WCJ Rago's decision. Claimant appealed to this Court.[4]

Claimant argues that the Board erred by affirming WCJ Rago's decision granting Employer's 2010 Termination Petition because Employer failed to meet its burden of proving that Claimant's medical condition changed since Employer's 2009 Termination Petition was denied. We disagree.

Section 413(a) of the Act states, in pertinent part:

> A [WCJ] designated by the [D]epartment may, at any time, . . . terminate a [NCP], . . . upon petition filed by either party with the [D]epartment, upon proof that the disability[5] of an injured employe has . . . temporarily or finally ceased . . . . Such . . . termination shall be made as of the date upon which it is shown that the disability of the injured employe has . . . temporarily or finally ceased . . . .

77 P.S. § 772. "To succeed in a termination petition, an **employer bears the burden of proving by substantial evidence that a claimant's disability ceased**, or any remaining conditions are unrelated to the work injury." *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008) (emphasis added). The burden is substantial since **disability is presumed to continue unless and until proved otherwise**. *Giant Eagle, Inc. v. Workmen's Comp. Appeal Bd. (Chambers)*, 635 A.2d 1123 (Pa. Cmwlth. 1993).

> In a case where the claimant complains of continued pain, this burden is met when an **employer's medical expert unequivocally testifies** that it is his opinion, within a

[4] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

[5] "Under [the Act], the term 'disability' is synonymous with loss of earning power." *Donahay v. Workers' Comp. Appeal Bd. (Skills of Cent. Pa. Inc.)*, 109 A.3d 787, 792 (Pa. Cmwlth. 2015).

reasonable degree of medical certainty, that the **claimant is fully recovered**, can return to work without restrictions **and that there are no objective medical findings which either substantiate the claims of pain** or connect them to the work injury. **If the WCJ credits this testimony, the termination of benefits is proper**.

*Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997) (footnote omitted; emphasis added); *see also, Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195 (Pa. Cmwlth. 2007).

Moreover, our Supreme Court has held:

In order to terminate benefits on the theory that a claimant's disability has reduced or ceased due to an improvement of physical ability, **it is first necessary that the employer's petition be based upon medical proof of a change in the claimant's physical condition**. Only then can the [WCJ] determine whether the change in physical condition has effectuated a change in the claimant's disability, i.e., the loss of his earning power. Further, by natural extension **it is necessary that, where there have been prior petitions to . . . terminate benefits, the employer must demonstrate a change in physical condition since the last disability determination**.

*Lewis v. Workers' Comp. Appeal Bd. (Giles & Ransome, Inc.)*, 919 A.2d 922, 926 (Pa. 2007) (emphasis added). Accordingly, "**Employer's case** [**must**] **begin with the adjudicated facts found by the WCJ in** [**his/her previous**] **termination petition** [**denial**] **and work forward in time to show the required change**."[6] *Folmer v.*

---

[6] The *Lewis* Court explained:

Absent this requirement 'a disgruntled employer . . . could repeatedly attack what he considers an erroneous decision of a [WCJ] by filing petitions based on the same evidence ad infinitum, in the hope that one referee would finally decide in his favor.' *Dillon* [*v. Workmen's Comp. Appeal Bd.*], 640 A.2d [386,] 389 [(Pa. 1994)], [(quoting *Banks v.* [*Workmen's Comp. Appeal Bd.*], . . . 327 A.2d 404, 406 ([Pa. Cmwlth.] 1974)[)].

*Lewis*, 919 A.2d at 926.

*Workers' Comp. Appeal Bd. (Swift Transp.)*, 958 A.2d 1137, 1143-44 (Pa. Cmwlth. 2008) (emphasis added).

"The determination of whether a claimant's subjective complaints of pain are accepted is a question of fact for the WCJ." *Udvari*, 705 A.2d at 1293. Moreover, it is well established that "[t]he WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011). "The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000).

Here, in deciding Employer's 2009 Termination Petition, WCJ Doman made findings that, in conducting Claimant's January 7, 2009 IME, Dr. Bennett took Claimant's history, reviewed Claimant's medical, physical therapy, epidural, EMG and MRI records, and found Claimant's examination to be within normal limits. C.R. Ex. C-2, WCJ Doman Dec. at 3-4. WCJ Doman also made findings that Dr. Stempler had treated Claimant as recently as August 25, 2009 and, based upon the 2009 EMG and cervical and right shoulder MRIs, opined that Claimant's continued cervical and right shoulder pain complaints were the result of Claimant's work accident. *Id.* at 5. Dr. Stempler referred Claimant for pain management and surgical intervention. *Id.*

According to WCJ Doman's November 23, 2009 decision, Dr. Bennett represented that he conducted a January 7, 2009 IME and concluded, based upon his review of Claimant's medical records, history and normal physical examination, that Claimant was fully recovered from his work injury and was capable of returning to work without restriction. However, Claimant described that, despite ongoing treatment, he had daily right arm and cervical pain that rendered him unable to lift his arm above shoulder level, and he experienced headaches that make it impossible for him to return to his pre-injury job. Further, based upon his examination of Claimant

10

and Claimant's diagnostic test results, Dr. Stempler confirmed that Claimant had not recovered from his working injury. WCJ Doman declared that, since Dr. Stempler's opinions were consistent with Claimant's credible complaints, and Dr. Bennett offered no explanation for Claimant's ongoing complaints, to the extent the doctors disagreed, Dr. Stempler's opinion was more credible.

This Court has recognized that the evidence necessary to prove a change since a prior adjudication "will be different in each case." *Folmer*, 958 A.2d at 1144. "**[B]y accepting the employer's medical evidence of full recovery as credible, a WCJ could properly make a finding that the employer has met the standard set forth in *Lewis* [of] a change in Claimant's condition**." *Delaware Cnty. v. Workers' Comp. Appeal Bd. (Browne)*, 964 A.2d 29, 35 (Pa. Cmwlth. 2008) (emphasis added); *see also Johnson v. Workers' Comp. Appeal Bd. (Bucks Cnty. Intermediate Unit)* (Pa. Cmwlth. No. 1232 C.D. 2010, filed February 26, 2013).[7] Moreover, although the WCJ's finding cannot be based solely upon evidence that pre-dates the previous adjudication, *id.*, it **may be based upon a review of such evidence plus a post-adjudication examination**. *See Adams v. Workers' Comp. Appeal Bd. (Cmty. Behaviorial Health)* (Pa. Cmwlth. No. 1368 C.D. 2010, filed May 19, 2011);[8] *see also Krnaich v. Workers' Comp. Appeal Bd. (Allegheny Ludlum Corp.)* (Pa. Cmwlth. No. 215 C.D. 2014, filed September 3, 2014);[9] *Johnson*. Finally, "it is not necessary [for the employer] to demonstrate that a claimant's diagnoses have changed since the last proceeding, but only that **his symptoms have improved to the point where he is capable of gainful employment**." *Simmons v. Workers' Comp. Appeal Bd.*

---

[7] We acknowledge that this Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414 of the Commonwealth Court's Internal Operating Procedures. 69 Pa. Code § 69.414. In light of the dearth of reported case law on this issue, *Johnson* is cited herein for its persuasive value.

[8] *Adams* is unreported and, thus, cited herein for its persuasive value.

[9] *Krnaich* is unreported and, thus, cited herein for its persuasive value.

11

*(Powertrack Int'l)*, 96 A.3d 1143, 1149 (Pa. Cmwlth. 2014) (emphasis added). This Court has declared that a **change** sufficient to satisfy the *Lewis* requirement **exists if there is a lack of objective findings to substantiate a claimant's continuing complaints**. *See Adams*; *see also Krnaich*.

Here, WCJ Rago made the following findings on remand:

1. The Findings of Fact set forth . . . in the December 13, 2011 Decision of this [WCJ] are incorporated herein by reference as though fully set forth at length.

2. **This [WCJ] finds that [] Employer has proven a change in [] Claimant's condition since the adjudication of the [2009 Termination Petition] before WCJ [] Doman**. In coming to this conclusion, this [WCJ] has considered the following:

> a) The incredible testimony given by [] Claimant concerning his activities in relation to his complaint[]s of shoulder pain. This [WCJ] notes [] Claimant traveled to Los Angeles along with obtaining multiple tattoos, including one on his right injured arm.

> b) The lack of any active medical treatment since December of 2009.

> c) At the time of [] Employer's medical expert, Dr. Bennett['s] examination on May 4, 2010, [] Claimant had seen Dr. [Cohen], had undergone an EMG and had additional MRI studies done of the cervical spine as well as the right shoulder.

WCJ Remand Dec. at 3 (emphasis added); R.R. at 30a. Accordingly, in crediting Dr. Bennett's testimony relative to Claimant's symptoms and treatments since 2009, WCJ Rago concluded that Employer met its burden of proving a change in Claimant's physical condition since WCJ Doman's November 23, 2009 decision.

12

Neither the Board nor the Court may reweigh the evidence or the WCJ's credibility determinations. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246 (Pa. 2001). This Court has stated:

> '[I]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made.' [*Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.),* 873 A.2d 25, 29 (Pa. Cmwlth. 2005)] (quoting [*Del. Cnty.*] *v. Workers' Comp. Appeal Bd. (Baxter Coles),* 808 A.2d 965, 969 (Pa. Cmwlth. 2002)). We review the entire record to determine if it contains evidence a reasonable mind might find sufficient to support the WCJ's findings. If the record contains such evidence, the findings must be upheld even though the record contains conflicting evidence.

*Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (citation omitted).

> 'In performing a substantial evidence analysis, this court must view the evidence in a light most favorable to the party who prevailed before the factfinder.' [*Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison),* 819 A.2d 164, 168 (Pa. Cmwlth. 2003)]. 'Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party.' *Id.*

*3D Trucking Co., Inc. v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Pa. Cmwlth. 2007).

Based upon its review of the record evidence and with WCJ Rago's role as factfinder in mind, the Board held:

> After a careful review of the record, we determine no error. [Employer] had the burden of establishing a change in Claimant's condition since the date of the last IME. *Lewis.* To meet its burden, [Employer] presented deposition testimony from Dr. Bennett, who **examined Claimant for a second time on May 4, 2010**. Dr. Bennett **also reviewed**

**additional medical records and reports from 2009**. Dr. Bennett opined based on his examination and review of medical records, that Claimant was fully recovered from all aspects of his work injury. The **WCJ accepted the testimony of Dr. Bennett as credible**. She also **rejected the testimony of Claimant as not credible** with respect to his ongoing complaints. She noted that **Claimant had travelled to Los Angeles** and gotten **multiple tattoos**, including one **on his injured arm**. She noted as well that Claimant had **not actively treated for his work injury since 2009**. The **WCJ found, based on these factors and the testimony of Dr. Bennett, that** [**Employer**] **had established a change in Claimant's condition** since the date of the last IME. . . . The WCJ did not err in finding that [Employer] met its burden, based on the testimony of Claimant and Dr. Bennett. Because [Employer] met its burden of proof, the WCJ did not err in granting the [2010] Termination Petition.

Board Dec. at 6-7 (emphasis added); R.R. at 39a-40a.

Certainly, the "doctor's [credited] diagnosis and opinion of work ability . . . supported by other evidence of record, namely Claimant's activities and the WCJ's personal observation of Claimant . . . which suggested that Claimant's subjective complaints were either not accurate, not as severe as described or had improved since the last proceeding[,]" are sufficient to establish a change in Claimant's condition such that the *Lewis* requirement is met. *Simmons*, 96 A.3d at 1149. The fact that Dr. Bennett rendered the same opinion after Claimant's May 2010 IME as he did following Claimant's January 2009 IME does not invalidate the latter opinion, particularly when the WCJ's finding was based upon Dr. Bennett's credited medical opinion and Claimant's testimony of his activities since the 2009 Termination Petition was denied. Because there was substantial evidence to support the WCJ's conclusion that Employer proved there was a change in Claimant's physical condition since WCJ Doman's November 23, 2009 decision, the Board properly affirmed the WCJ's decision.

14

Claimant also argues that the Board erred by affirming the WCJ's decision granting Claimant's Penalty Petition, but with a 0% penalty. We disagree. We acknowledge that Section 435(d)(i) of the Act[10] authorizes WCJs to assess penalties against employers for violations of the Act. Moreover, "a claimant who files a penalty petition bears the burden of proving a violation of the Act occurred. If the claimant meets his or her initial burden of proving a violation, the burden then shifts to the employer to prove it did not violate the Act." *Gumm v. Workers' Comp. Appeal Bd. (Steel)*, 942 A.2d 222, 232 (Pa. Cmwlth. 2008) (citation omitted). Finally, "[t]he assessment of penalties, and **the amount of penalties imposed are matters within the WCJ's discretion**." *Id.* (emphasis added). Thus, "absent an abuse of discretion by the WCJ . . . [a penalty award] will not be overturned on appeal." *Indiana Floral Co. v. Workers' Comp. Appeal Bd. (Brown)*, 793 A.2d 984, 991 n.18 (Pa. Cmwlth. 2002). Here, a violation was found, but no penalty assessed. *See Dep't of Labor & Indus. v. Workmen's Comp. Appeal Bd.*, 410 A.2d 1325 (Pa. Cmwlth. 1980).

> After remand, WCJ Rago made the following relevant finding:

> 3. This [WCJ] finds that while [] Employer per se violated the terms and provisions of the [Act] for failing to pay for medical treatment, this [WCJ] does not believe that the violation is significant enough to warrant a penalty. In coming to this conclusion, this [WCJ] has considered the incredible testimony of [] Claimant concerning his pain levels and his activities, traveling specifically to Los Angeles and obtaining a tattoo on the right arm. The tattooed arm is the same on which surgery would have been performed; the same body part where [] Claimant was experiencing excruciating pain and had not receiv[ed] any active medical treatment since December of 2009.

WCJ Remand Dec. at 3; R.R. at 30a.

---

[10] Added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 991(d)(i).

Upon review, the Board concluded:

> On remand, the WCJ explained that she did not believe that [Employer's] violation of the Act was significant enough to warrant the imposition of a penalty. In reaching this determination, the WCJ noted that she did not accept as credible Claimant's complaints of pain, noting again that he travelled to Los Angeles and that he got a tattoo on his injured arm, the same arm on which the surgery would have been performed and the same body part which Claimant alleged was causing him to experience excruciating pain, when he was no longer receiving any active medical treatment. The WCJ has discretion over the amount of penalties to be awarded. Here, the WCJ adequately explained, on remand, why she chose not to award penalties. We cannot say, upon review of this explanation, that the WCJ abused her discretion by declining to award penalties in this case.

Board Op. at 8; R.R. at 41a. Finding no error in the Board's conclusion, we hold that the Board did not err by affirming the WCJ's decision to assess 0% penalties against Employer.

Based upon the foregoing, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

Judge Cosgrove did not participate in the decision in this case.

16

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Baumann,                  :
               Petitioner     :
                               :
          v.                 :
                               :
Workers' Compensation Appeal    :
Board (Kellogg Company),       :    No. 2603 C.D. 2015
             Respondent    :

## O R D E R

AND NOW, this 23ʳᵈ day of September, 2016, the Workers' Compensation Appeal Board's November 20, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge