IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Petrina McCall, : 
               Petitioner : 
                :   No.  352 C.D. 2020
          v. : 
                :   Submitted:  October 2, 2020
Workers' Compensation Appeal : 
Board (Philadelphia Parking : 
Authority), : 
               Respondent : 

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE J. ANDREW CROMPTON, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH               FILED:  January 11, 2021

Petrina McCall (Claimant) petitions for review of the March 12, 2020 order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of Workers' Compensation Judge Holly San Angelo (WCJ or WCJ San Angelo), granting the Philadelphia Parking Authority's (Employer) petition to terminate (Termination Petition) Claimant's workers' compensation benefits based on her full recovery from her work-related injuries.  On appeal, Claimant contends that the Board erred in granting the Termination Petition because Employer's medical expert failed to review her current medical records, and the WCJ erred in rendering her credibility determinations.  For the reasons that follow, we affirm.

On January 9, 2015, Claimant was injured in an automobile accident while working for Employer as a parking enforcement officer, when a passing vehicle hit the

vehicle she was driving. On January 30, 2015, Employer issued a medical-only notice of temporary compensation payable, accepting that Claimant sustained contusions to her right hip and right knee as a result of the accident.

On February 12, 2015, Claimant filed a claim petition, alleging that she sustained additional injuries in the accident. In a decision circulated on November 21, 2016, WCJ Erin Young (WCJ Young) agreed and found that in addition to the accepted injuries, Claimant also sustained post-concussion syndrome with post-traumatic headache; lumbar radiculitis; lumbar facet syndrome; bilateral SI joint dysfunction; right knee contusion; right knee bursitis; bilateral greater trochanter bursitis; right ischial bursitis; and cervical, thoracic, and lumbar sprain and strain. (Reproduced Record (R.R.) at 650a, 656a-57a.) WCJ Young thus awarded Claimant temporary total disability benefits from January 25, 2015, onward at the rate of $573.26 per week based upon an average weekly wage of $859.83, pursuant to the provisions of the Workers' Compensation Act (Act).[1] (R.R. at 657a-58a.)

On October 5, 2017, Employer filed the Termination Petition, contending that Claimant had fully recovered from her work injuries as of September 20, 2017. In support of the Termination Petition, Employer presented Claimant's deposition testimony taken on December 13, 2017, and the deposition testimony of Paul M. Shipkin, M.D., taken on January 24, 2018.

During her deposition, Claimant was questioned about the independent medical examination (IME) conducted by Dr. Shipkin on September 20, 2017. Claimant acknowledged that she wore sunglasses to the IME and asked that the shades in the room be closed. When asked why she wore sunglasses at the time, she explained that, "when I'm beginning to have headaches[,] my eyes bother me and I w[ear]

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.1, 2501-2710.

2

sunglasses." (Claimant 12/13/2017 Deposition (Claimant Dep.), at 7; R.R. at 424a-25a.) Claimant was also asked why she was not currently wearing sunglasses and did not wear them at two prior depositions or before the WCJ. In response, Claimant stated that it was not sunny in those rooms. (Claimant Dep. at 8; R.R. at 425a.)

Claimant was also asked about her appointments with Brad C. Klein, M.D. Claimant agreed that she stopped seeing Dr. Klein in September 2016, shortly before her claim petition was granted, and did not return to him for treatment until July 14, 2017. (Claimant Dep. at 9-10; R.R. at 426a-27a.) Since then, Dr. Klein has prescribed her Diclofenac for pain and headaches; Relpax for headaches; and Amitriptyline for depression and sleeplessness. (Claimant Dep. at 10-14; R.R. at 427a-31a.)

Claimant also treats with Tony Al-Amin, M.D., once or twice a month. Dr. Al-Amin provides physical therapy. Dr. Al-Amin has given Claimant injections in the back of her head, hips, and right knee. Claimant stated that she continues to have pain from her work injuries, which is sometimes aching pain and sometimes sharp pain. (Claimant Dep. at 34; R.R. at 455a.) Dr. Al-Amin prescribed a Diclofenac gel for the pain. (Claimant Dep. at 35; R.R. at 456a.)

Next, Employer presented the deposition testimony of Dr. Shipkin, who is board certified in neurology. Dr. Shipkin related that at the September 20, 2017 IME, Claimant provided a history of her ongoing difficulties resulting from her work injuries. She stated to Dr. Shipkin that, initially, her right knee and right thigh began to swell after the accident. (Dr. Shipkin 1/24/2018 Deposition (Shipkin Dep.), at 13; R.R. at 482a.) About 10 days later, Claimant stated that she began having "issues with [her] head." *Id.* Claimant further stated to Dr. Shipkin that she "began to feel weird in [her] head, like seeing a cloud growing in [her] head." (Shipkin Dep. at 14; R.R. at 483a.) She then developed headaches, which "disappeared for a period of time . . . ." (Shipkin Dep. at 19-20; R.R. at 488a-89a.) However, in February 2017, she said the

3

headaches returned. (Shipkin Dep. at 20; R.R. at 489a.) Claimant stated that she continued to have headaches, right thigh soreness, right buttock soreness, and neck pain as a result of her work injuries. (Shipkin Dep. at 20-21; R.R. at 489a-90a.)

Dr. Shipkin then testified that he reviewed Claimant's medical records, a prior IME report, her deposition testimony from 2015, and photographs of the accident and the police report. (Shipkin Dep. at 23-24, 26; R.R. at 492a-93a, 495a.) He explained that he performed a standard comprehensive neurologic assessment on Claimant. (Shipkin Dep. at 33-34; R.R. at 502a-03a.) He stated that he did not find any abnormalities when examining her head, that "[h]er neck was normal, supple, [with] full range of movement, and [that] her spine musculature was normal." (Shipkin Dep. at 34; R.R. at 503a.) Dr. Shipkin also stated that he found her responses to his examination to be "vague and inconsistent." *Id.* For example, she would claim "[i]t's uncomfortable" when he assessed certain areas, but "on the same assessment a moment later, she wouldn't . . . ." *Id.*

Dr. Shipkin noted that Claimant wore sunglasses to the IME. He stated that it was typical for someone who is having a migraine to shield his or her eyes from fluorescent lighting. (Shipkin Dep. at 35; R.R. at 504a.) He stated, however, that when Claimant removed her sunglasses, she did not squint or appear to be in any obvious discomfort, which would have been the expected physiologic response. (Shipkin Dep. at 36; R.R. at 505a.) Dr. Shipkin explained that Claimant did begin to squint during the eye examination, making it difficult for him to do a complete examination. He testified that when he was able to examine Claimant's eyes, he determined that her pupils, eye movements, visual fields, and cranial nerves were all normal. *Id.*

Dr. Shipkin further determined that Claimant's coordination, muscle tone, stance, and posture were normal. Despite this, "[w]hen she walked or ambulated, she had a bizarre intermittently lurching gait[,] including lurching while she was heel and

4

toe walking." (Shipkin Dep. at 36-37; R.R. at 505a-06a.) Dr. Shipkin stated that he has seen this nonphysiologic quality numerous times over the years, and that "[i]t's usually seen in folks who are either symptom magnifying or have other emotional issues in their life." (Shipkin Dep. at 37; R.R. at 506a.)

Dr. Shipkin opined that, based on the "objective data," Claimant was "neurologically intact" and did not have any residual deficits related to her work injuries. (Shipkin Dep. at 39; R.R. at 508a.) He therefore concluded that she had recovered from her accepted work injuries. *Id.* Regarding Claimant's ongoing complaints, Dr. Shipkin stated that post-traumatic headaches do not disappear for months and then return at a later date. He further opined that the reason for Claimant's headaches is not work-related, and that her thigh and buttock area soreness, just like her headaches, is subjective in nature. (Shipkin Dep. at 39-40; R.R. at 508a-09a.) He found no objective evidence "to suggest either headache or a right lower extremity thigh or hip soreness or right buttock soreness." (Shipkin Dep. at 40; R.R. at 509a.) As to her neck, Dr. Shipkin related that Claimant moved her head normally with no obvious discomfort, and, therefore, he could not objectively verify any of her complaints. *Id.*

In response to the Termination Petition, Claimant testified live before WCJ San Angelo on June 7, 2018. Claimant testified that she began treating with Dr. Al-Amin at the time of her work injury. Claimant stated that at some point, she stopped treating with him because she felt better, and that she had not seen him for "months." (WCJ 6/7/2018 Hearing Transcript (Hr'g Tr.), at 22-23; R.R. at 116a-17a.) She explained that she later returned to Dr. Al-Amin for treatment and that she now sees him monthly regarding the pain in her right buttock and right hip area, as well as for her headaches. Claimant testified that Dr. Al-Amin prescribed physical therapy, which she does weekly. She next stated that she treats with Dr. Klein for her headaches, and

5

that she began seeing him at the time of the work injury. Claimant related that at some point, she also stopped treatment with Dr. Klein because she felt better. (Hr'g Tr. at 25; R.R. at 119a.) However, she stated that she now treats with him about every three months.

Claimant also presented the deposition testimony of Dr. Al-Amin, who is board certified in physical medicine and rehabilitation. Dr. Al-Amin testified that he began treating Claimant shortly after the automobile accident. He explained that Claimant returned to work on light duty sometime after the accident, but that her symptoms returned and she stopped working. Dr. Al-Amin related that, on July 7, 2015, he administered a right lateral cutaneous nerve block that gave Claimant 100% relief from the pain. (Dr. Al-Amin 3/12/2018 Deposition (Al-Amin Dep.), at 18; R.R. at 168a.) However, Claimant told him that the pain returned one week later. Dr. Al-Amin further explained that his physical findings at the time showed all of the injuries ultimately accepted by WCJ Young in the prior claim petition proceeding.[2]

Dr. Al-Amin testified that he has continued treating Claimant for her work injuries, and acknowledged that there were some gaps in treating Claimant, but that her current complaints were the same as her past complaints. Dr. Al-Amin related that, on February 19, 2018, Claimant's chief complaints were headaches, neck pain, low back pain, right buttock pain, and right thigh tenderness. He recommended physical therapy two or three times per week, chiropractic treatments, and acupuncture treatments. Dr. Al-Amin also did not believe that Claimant is magnifying her symptoms. He opined that her prognosis for recovery is fair to poor because her symptoms have continued over time and she is over 50 years old. (Al-Amin Dep. at 33; R.R. at 183a.) Dr. Al-Amin stated that he continues to see her on a monthly or bimonthly basis.

_____

[2] Dr. Al-Amin previously testified on Claimant's behalf in support of her claim petition.

6

On cross-examination, Dr. Al-Amin agreed that medical testing showed negative results regarding Claimant's right thigh and lumbar area. (Al-Amin Dep. at 55; R.R. at 205a.) Further, he based Claimant's continued post-concussive syndrome on her subjective complaints of pain.

Claimant also presented the deposition testimony of Dr. Klein. Dr. Klein is board certified in neurology, and his practice focuses primarily on headaches. (Dr. Klein 5/4/2018 Deposition (Klein Dep.), at 10; R.R. at 264a.) He testified that he began treating Claimant in February 2015. Dr. Klein stated that Claimant experienced daily headaches, along with blurry vision, light sensitivity, short-term memory loss, depression, anxiety, and dizziness. He noted that he prescribed Claimant Diclofenac, Topamax, Amitriptyline, Relpax, and Effexor.

Dr. Klein's testimony revealed that he did not treat Claimant from September 8, 2016, through July 14, 2017. Dr. Klein testified that, when Claimant returned for treatment, she stated that her headaches were occurring twice a week. He explained that Claimant had been treating with Aleve, as she ran out of the Diclofenac because of the gap in treatment. (Klein Dep. at 35; R.R. at 289a.) Over the course of several months, Claimant's headaches improved with the use of Diclofenac. However, her dizziness and cognitive issues remained. Dr. Klein did not believe Claimant could return to work. He suggested, however, that Claimant attempt a volunteer job to see if she is capable of going to work while experiencing headaches. He also recommended counseling for Claimant's depressed mood.

In her Decision issued on December 11, 2018, WCJ San Angelo determined that Employer sustained its burden of proving that Claimant had fully recovered from her work injuries as of September 20, 2017. In doing so, the WCJ found that Claimant's testimony was not credible, rejecting Claimant's claim that she was not fully recovered from her work injuries. (WCJ Decision, Finding of Fact (F.F.)

7

No. 8.)  The WCJ also found it "telling" that Claimant stopped treating with Dr. Al-Amin and Dr. Klein following WCJ Young's grant of Claimant's claim petition in the prior proceeding, and that Claimant returned to treatment "just prior to" her IME with Dr. Shipkin.  *Id.*  The WCJ further noted that the gaps in Claimant's "treatment were 15 months with Dr. Al-Amin and 10 months with Dr. Klein."  *Id.*

The WCJ credited Dr. Shipkin's testimony that Claimant had fully recovered from her work injuries as of September 20, 2017, and rejected the testimony of Dr. Al-Amin and Dr. Klein.  (WCJ Decision, F.F. No. 9.)  The WCJ noted that Claimant's examination results "were objectively normal with inconsistent and nonphysiologic responses[,]" and that "the diagnostic studies were unremarkable."  *Id.*  The WCJ therefore rejected the testimony of Dr. Al-Amin and Dr. Klein that Claimant's symptoms had improved over the period that she discontinued treatment with them, but that she suddenly worsened many months later.  The WCJ determined that "[t]heir testimony that there was improvement for these large gaps and then a return of all symptoms is simply not credible."  *Id.*  Accordingly, the WCJ granted Employer's Termination Petition, and Claimant appealed to the Board.

Before the Board, Claimant argued that the WCJ's findings were not supported by substantial evidence, and that Employer did not establish a change in Claimant's condition since the November 21, 2016 grant of her claim petition.  The Board reviewed the evidence and concluded that the WCJ's Decision was based on substantial competent evidence of record.  In so concluding, the Board observed that the WCJ accepted Employer's medical witness over Claimant's medical witnesses and explained her reasons for so doing, which was proper under the Act.  As such, the Board concluded that Claimant failed to show that the WCJ erred and, thus, affirmed the WCJ's Decision.

8

Claimant now petitions this Court for review of the Board's Order,[3] raising a general claim that the WCJ erroneously terminated her benefits. In her brief, she claims that Dr. Shipkin's testimony was insufficient to support the termination of her benefits because he did not examine all of Claimant's medical records; that the WCJ erroneously attributed the gaps in Claimant's medical treatment to the prior litigation over her benefits; and that the WCJ erred in accepting Dr. Shipkin's testimony over the testimony of Claimant's medical experts.

We begin with a review of the law in termination proceedings. An employer seeking to terminate benefits bears the burden of proving either that the claimant's disability has ceased or that any current disability arises from a cause unrelated to the claimant's work injury. *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998). An employer meets this burden when its medical expert unequivocally testifies that "it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, [and] can return to work without restrictions[,] and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). "If the WCJ credits this testimony, the termination of benefits is proper." *Id.*

Claimant argues that Dr. Shipkin failed to review many of her medical records. Specifically, she claims that Dr. Shipkin did not review the Termination Petition deposition transcripts of Dr. Klein and Dr. Al-Amin; that Dr. Shipkin did not read the prior decision of WCJ Young, granting the claim petition; that Dr. Shipkin did

---

[3] On review, we determine whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact were supported by substantial competent evidence. *Stepp v. Workers' Compensation Appeal Board (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

9

not review Dr. Al-Amin's medical records and treatment notes from 2016 onward; and that Dr. Shipkin did not review Dr. Klein's medical records or treatment notes from 2017 onward.[4]  Claimant further argues that Dr. Shipkin's testimony is insufficient because it is based on evidence that predates the prior litigation concerning the claim petition.

Claimant also asserts that the record does not support the WCJ's finding that she returned to treatment with Dr. Klein and Dr. Al-Amin *because* Employer requested an IME.  She notes that Dr. Klein saw her on July 14, 2017, and recorded that she returned to treatment due to increased headaches.  She also claims that she returned to treatment with Dr. Al-Amin on July 17, 2017, for the same reason.

Finally, Claimant contends that the testimony of Dr. Klein and Dr. Al-Amin, respectively, is more credible than Dr. Shipkin's testimony, because she saw her doctors on numerous occasions and they provided consistent testimony that she continues to suffer from her work injuries.  She points out that Dr. Shipkin merely examined her on one occasion for less than two hours.  Moreover, Claimant asserts that there was no reason for the WCJ to question her veracity, as she planned to have a long career with Employer and she worked for Employer for almost a decade, which shows that she had a motive to continue her employment.

Employer responds that Dr. Shipkin was aware of the work injuries found by WCJ Young in her decision in the claim petition proceeding.  Employer points out, however, that Dr. Shipkin conducted an IME of Claimant on September 20, 2017, and found that she had fully recovered from her work injuries, and the WCJ accepted Dr.

---

[4] Claimant complains that Dr. Shipkin was shown photographs of the automobile accident and then asked whether the photographs indicated the likelihood of longstanding injuries.  However, Claimant did not raise this issue before the Board, (*see* Board Appeal, R.R. at 27a-28a), or claim that the photographs impacted the outcome of the case.  We therefore do not consider the issue on appeal.

10

Shipkin's findings. As such, Employer asserts that it met its burden on the Termination Petition.

The WCJ found Claimant's medical treatment gap of 15 months with Dr. Al-Amin, and 10 months with Dr. Klein, troubling. (WCJ Decision, F.F. No. 8.) Claimant testified that she stopped treatment because she was feeling better, (Hr'g Tr. at 23; R.R. at 117a), but, in response to the Termination Petition, she claimed that she had not recovered from her work injuries. (Claimant's Answer to Termination Petition at 1; R.R. at 7a.) Moreover, the WCJ had the opportunity to observe Claimant testify, and it was within the WCJ's authority to assess Claimant's demeanor and deem her testimony not credible. *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 77 (Pa. Cmwlth. 2012) (a WCJ may rely upon her own observations of the claimant's demeanor in assessing credibility).

The WCJ also listed the records examined by Dr. Shipkin, (*see* WCJ Decision, F.F. No. 2(d)), which included, *inter alia*, the deposition transcript of a medical expert, Dr. Steinberg, dated October 27, 2015, regarding the claim petition proceedings; the police report regarding the vehicle accident, as well as photographs of the accident; two reports containing the results of Claimant's 2015 brain scans; reports from Dr. Klein; reports from Dr. Al-Amin; reports regarding Claimant's physical therapy; and Claimant's deposition testimony from 2015.

Claimant asserts that all of the above materials reviewed by Dr. Shipkin predate the prior claim petition proceeding in this matter, relying on *Baumann v. Workers' Compensation Appeal Board (Kellogg Company)*, 147 A.3d 1283 (Pa. Cmwlth. 2016), as support for her contention, which she claims established that a finding of full recovery cannot be based solely on evidence that predates the previous adjudication, *i.e.*, evidence from the claim petition proceeding. However, Claimant has not fully articulated the holding in *Baumann*. What *Baumann* actually states is that,

11

"although the WCJ's finding cannot be based solely upon evidence that pre[]dates the previous adjudication, . . . it **may be based upon a review of such evidence plus a post-adjudication examination.**" *Id.* at 1291 (emphasis is original) (internal citation omitted). In the present case, Dr. Shipkin reviewed Claimant's prior medical records, including some that post-dated the prior adjudication regarding the claim petition, and also conducted an IME of Claimant on September 20, 2017, *i.e.*, a "post-adjudication examination," and relied on both Claimant's medical records and the results of the IME in determining that Claimant had fully recovered from her work injuries. Moreover, the WCJ accepted Dr. Shipkin's determination of full recovery as credible and, accordingly, found that Employer established a change in Claimant's condition sufficient to support a termination of benefits. *Baumann*, 147 A.3d at 1291. As such, Claimant failed to establish that the WCJ erred in finding that Employer met its burden of proving a change in Claimant's condition based on Dr. Shipkin's review of the medical evidence in this case.[5]

Claimant's next two allegations of error challenge the WCJ's fact-finding and credibility determinations. Claimant asserts that the WCJ erred in determining that the gaps in Claimant's medical treatment established that Claimant did not need medical treatment or that she only returned to treatment because Employer requested an IME. Claimant suggests that her medical records establish that she returned to treatment because her headaches increased in intensity. Likewise, Claimant asserts that

---

[5] Additionally, "[t]he fact that a medical expert does not have all of a claimant's medical records goes to the weight given the expert's testimony, not its competency." *Pryor v. Workers' Compensation Appeal Board (Colin Service Systems)*, 923 A.2d 1197, 1203 (Pa. Cmwlth. 2006) (quoting *Marriott Corporation v. Workers' Compensation Appeal Board (Knechtel)*, 837 A.2d 623, 631 n.10 (Pa. Cmwlth. 2003)). The WCJ, as the ultimate factfinder in workers' compensation cases, "has exclusive province over questions of credibility and evidentiary weight . . . ." *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 949 (Pa. Cmwlth. 2010).

12

the WCJ should not have credited Dr. Shipkin's testimony over her medical experts. She points out that Dr. Shipkin only examined her on one occasion, and Dr. Klein and Dr. Al-Amin treated her for years and agreed she has not fully recovered from her work injuries.

The law is well established that "[t]he WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *University of Pennsylvania v. Workers' Compensation Appeal Board (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011). "The WCJ . . . is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Griffiths v. Workers' Compensation Appeal Board (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000). When considering whether the WCJ's decision is supported by substantial evidence, we "must view the evidence in a light most favorable to the party [that] prevailed before the factfinder" and "draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party." *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003). "[I]t does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ. Rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding." *Id.*

The WCJ was not required to accept that Claimant's headaches returned because that is what Claimant reported to her doctors. The WCJ observed Claimant testify and found that her testimony was not credible. Further, the record establishes that Claimant did not treat with Dr. Al-Amin for 15 months, or with Dr. Klein for 10 months. She then returned to treatment with them in July 2017, two months before her September 20, 2017 IME. The WCJ found this meaningful, as was her prerogative in deciding the weight of the evidence.

13

Contrary to Claimant's contentions, the WCJ also was not bound to accept Claimant's medical experts over Dr. Shipkin, because Dr. Shipkin only examined her on one occasion. If that was the standard, the IME process would be pointless. The WCJ accepted Dr. Shipkin's testimony because he thoroughly examined Claimant and found no objective evidence that she still suffered from her January 9, 2015 work injuries. Dr. Shipkin also found Claimant's conduct during the IME indicative of symptom magnification. For example, Claimant walked with a lurching gait, despite normal posture, muscle tone, and stance; she wore sunglasses to her appointment, claiming the bright lights hurt her eyes, but she did not squint when the sunglasses were removed; and her claims of pain during the IME were inconsistent and vague, as she claimed to have pain in certain areas upon examination, but upon reexamination, she did not complain of pain.

In sum, Claimant has failed to establish that Dr. Shipkin's testimony was insufficient to support a termination of benefits, or that the WCJ erred in her fact-finding or credibility determinations. Accordingly, we affirm the Board's order.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Fizzano Cannon did not participate in this decision.

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Petrina McCall,                                :
                    Petitioner        :
                                               :   No.  352 C.D. 2020
        v.                                     :
                                               :
Workers' Compensation Appeal        :
Board (Philadelphia Parking         :
Authority),                                    :
                    Respondent       :

## *<u>ORDER</u>*

AND NOW, this 11th day of January, 2021, the order of the Workers'
Compensation Appeal Board, dated March 12, 2020, is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge