# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gregory Simmons,       :
      Petitioner  :
           :
    v.       :  No. 2168 C.D. 2013
           :  SUBMITTED: May 2, 2014
Workers' Compensation Appeal  :
Board (Powertrack International),  :
      Respondent :

BEFORE:  HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
      HONORABLE P. KEVIN BROBSON, Judge
      HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION BY
JUDGE LEADBETTER           FILED: July 24, 2014

    Claimant Gregory Simmons petitions for review of the order of the Workers' Compensation Appeal Board (Board), which affirmed the grant of Employer Powertrack International's petition for modification of benefits premised on a labor market survey demonstrating that Simmons had an earning capacity. The primary issue on appeal is whether Employer met its burden of demonstrating that Claimant's physical condition had changed since the last adjudication of his disability status.[1] After review, we affirm.

---

  [1] Claimant's arguments regarding whether: (1) the workers' compensation judge erred in failing to recognize the full extent of his established injury; and (2) Employer violated its obligation under our Supreme Court's recent decision *Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap)*, 81 A.3d 830 (Pa. 2013), have been waived as a result of Claimant's failure to raise them before the Board. *See McGaffin v. Workers' Comp. Appeal Bd. (Manatron, Inc.),* 903 A.2d 94 (Pa. Cmwlth. 2006) [failure to raise an issue with the requisite
**(Footnote continued on next page…)**

In 2001, Claimant sustained a totally disabling work-related head injury, which was subsequently established by a workers' compensation judge (WCJ) to be a closed head injury resulting in post-concussive syndrome. WCJ's decision and order at 10 (August 17, 2005); Reproduced Record (R.R.) at 18a. Since his injury, Claimant has undergone numerous independent medical examinations and Employer has sought to terminate his benefits on two occasions.[2] Since the focus of this appeal is again on whether Employer demonstrated a change in Claimant's condition, Claimant's condition at the time of the last termination proceeding is relevant and necessary to our resolution of this matter.

We begin by noting that while the prior WCJ failed to make any specific findings regarding Claimant's condition in his decision denying the second petition to terminate benefits, he did find that Claimant credibly testified that his subjective complaints remained the same since the first petition to terminate and that his condition had not improved. Similarly, while accepting as credible the opinion of Claimant's treating physician, Dr. Taylor, that Claimant's condition had

_____

(continued…)

specificity in the appeal documents before the Board constitutes a waiver of those issues under 34 Pa Code § 111.11(a)(2)].

[2] The first petition to terminate was filed in 2003 and the order denying it was filed in 2005. The second petition was filed in 2006, and the WCJ's denial was appealed to this court and then remanded for further fact-finding. *See Powertrack Internat'l v. Workers' Comp. Appeal Bd. (Simmons)*, No. 1090 CD 2008 (mem. op. by Judge Leadbetter, filed April 15, 2009). A more detailed account of the litigation history of this matter is set forth in our opinion in *Powertrack*. In that appeal, we addressed whether Employer met its threshold burden of demonstrating a change in Claimant's condition since the prior disability adjudication (i.e., the first petition to terminate benefits) as required by our Supreme Court in *Lewis v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 919 A.2d 922 (Pa. 2007). Concluding that Employer's evidence was legally sufficient, if believed, to establish the requisite change in condition, we remanded to the WCJ, who had incorrectly held otherwise, for further fact finding, specifically in relation to the weight and credibility of Employer's medical evidence. Following remand, termination of benefits was again denied.

2

not changed since he last testified in the first termination proceeding, that WCJ failed to make any specific findings from Dr. Taylor's testimony regarding Claimant's medical condition other than noting that Claimant continues to suffer from depressive disorder, cognitive disorder and other symptoms resulting from post-concussion syndrome. Moreover, because the first termination proceeding focused solely upon whether Claimant had fully recovered from his injury, the fact-finding regarding Claimant's specific complaints and medical limitations at that time is also somewhat scant. However, according to the credited medical opinions in the first termination proceeding, including that of Dr. Taylor, Claimant related that he suffered from headaches, unsteadiness, memory problems, reduced activity, reduced social interaction and depression. The credited experts generally opined that Claimant's condition was consistent with post-concussion syndrome, that they found no signs of symptom magnification or malingering and that he was not capable of returning to employment at that time. In addition, the psychological testing administered at that time revealed short-term memory deficits, problems with processing speed, an impaired ability to pay attention and concentrate, and depression. *See* WCJ's decision and order (August 17, 2005); R.R. at 7a.

Notably, in connection with the present petition to modify benefits based upon earning capacity, Employer offered the medical report and deposition testimony of Eric Fishman, Ph.D., a neuropsychologist who evaluated Claimant in February 2008, administered his own neuropsychological testing and reviewed Claimant's medical records and prior test results. Based upon the results of his testing, Dr. Fishman testified to a diagnosis of probable malingered neurocognitive

dysfunction, founded in part on Claimant's inconsistent and invalid test results.[3] According to Dr. Fishman, the inconsistent test results also raised a question regarding the validity of Claimant's presentation.[4] In rendering his opinion, he acknowledged that earlier testing of Claimant by other specialists demonstrated a valid test performance, while the current testing he performed demonstrated that Claimant's performance was invalid. Notwithstanding his conclusion regarding Claimant's invalid test performance and that he could not rule out the presence of on-going symptoms, he still maintained that Claimant was capable of returning to full-time employment.[5] Specifically, the doctor stated: "I believe that he can and should be returning to employment." Fishman deposition at 37-38; R.R. at 200-

---

[3] In his report, Dr. Fishman defined "malingering" as "the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation . . . ." Fishman Report at 10 (attached to Notice of Ability to Return to Work) (internal quotations and authority omitted).

[4] In discussing the inconsistent test results, the doctor opined: "The point there is the inconsistency across test results measuring similar skills within the same testing session. It starts to bring up questions about the validity because we're seeing change to such a degree within the same brief period of time." Fishman deposition at 36; Reproduced Record (R.R.) at 199a. He further noted on cross-examination regarding whether a person with depression should work as a security guard, a job identified in the labor market survey: "Well, [I think he can work as a security guard because] as I conclude in my report, in this case I have evidence that the patient is exaggerating symptoms. So you're referring to a diagnosis [of depression] that is – and a scale, the Beck Depression Inventory, that is for the most part the patient's self-report, and I am calling into question his deficits on testing because I have evidence that he – that they are not credible to the best of my ability." *Id.* at 62-63; R.R. at 225-26a. Finally, when questioned on cross-examination on whether Claimant's ingestion of Percocet and Vicodin before the test could have impacted his ability, the doctor noted: "When I see a patient head up, focusing on the material, giving responses, reasonable speed, it argues against significant effects of issues like sedation from medication or inability to participate due to severe depression and these sorts of issues." *Id.* at 68; R.R. at 231a.

[5] The doctor did recommend, however, that Claimant begin working part-time for several weeks and increase to full time after that.

4

01a. Finally, Dr. Fishman testified that he approved the five positions included in Employer's labor mark survey as within Claimant's ability; those positions included a customer service representative at a call center, an unarmed security guard, a hotel front desk clerk, a restaurant dishwasher, and a cleaner at a school.[6]

Two vocational experts also testified in support of the petition, detailing the results of Claimant's vocational interview, the demands, skills required and wages associated with the jobs included in the labor market survey, and the process employed in locating the subject jobs as well as their creation of the corresponding job descriptions. All of the jobs involved full-time work but one, and the corresponding salaries ranged from $143.00 per week to $360.00 per week, with an average of $281.00 per week. Dr. Fishman approved all of the jobs as appropriate for Claimant; Dr. Taylor approved all jobs except for the security guard position.

Claimant testified before the current WCJ[7] on three occasions, beginning in February 2009 and finishing in November 2010. As before, he testified that his condition remains unchanged and he continues to suffer from memory, concentration and cognitive deficits, including headaches, dizziness, and difficulty sleeping, as well as an inability to drive more than 15 minutes. He maintained that he cannot work part-time or perform any of the jobs referenced in Employer's labor market survey because he experiences lack of concentration, light-headedness, dizziness, and an inability to sit or stand for long periods of time. He noted that during the day he attempts to read, clean the house and exercise.

---

[6] Claimant graduated from high school, where he completed a vo-tech course of study. At the time of his injury, he was working as a laborer. Past experience included jobs in a warehouse and working as a window cleaner.

[7] The termination petitions were litigated before a different judge.

Apparently because Claimant's ability to use a computer was disputed, among other things, he was questioned extensively regarding internet postings under his name on a website associated with the Pennsylvania Circle Track Club (PCTC). Claimant denied owning a computer, explaining that the computer in his home belonged to his 20-year old son and that most of the emails admitted into evidence were generated by his son; Claimant acknowledged that with his son's instruction, he mainly posted on-line greetings, comments on pictures and other communications consisting of a few lines. Claimant admitted that he belonged to the PCTC and that he attended more than four races in 2010 and even attended a race in Virginia, a distance of more than four hours away.[8] Surveillance of Claimant at a race was admitted into evidence. Dr. Taylor also testified on Claimant's behalf. Because Dr. Taylor's testimony was largely rejected by the WCJ in favor of the testimony of Dr. Fishman, who was specifically found to be more persuasive and credible, we need not recount it here.

Upon consideration of the evidence, the WCJ found that Claimant was sufficiently recovered from the residual effects of his injury to return to the work force. She further found that he was capable of performing the jobs of security guard, dishwasher and cleaner, entitling Employer to a modification based upon an earning power of $320.00 a week (derived from the highest paying job of security guard). Importantly, in reaching this conclusion, the WCJ found Claimant to be largely incredible, specifically noting that:

> [Claimant's] performance at the last two hearings greatly contradicted the first, further belied by the surveillance [of Claimant at an auto race] and IME evidence. He is certainly far removed from not being able to do any

---

[8] Apparently he was referring to auto racing.

6

> work. He managed to sit comfortably in the witness chair for lengthy hearings and spoke in an animated fashion regarding his "alleged depression."

WCJ's decision and order at 13 (April 22, 2011), attached to Claimant's appellate brief. The WCJ also discredited assertions that Claimant could not use a computer and Claimant's testimony that the internet postings regarding racing were made by his son. The WCJ found the internet postings and surveillance evidence significant of his ability to function in the jobs found to be suitable for him, stating:

> [C]laimant clearly has an active hobby that requires him to travel some distances, use a computer on occasion, coordinate activities, perform some basic tasks, and engage with others. . . . [His] demeanor, admissions on direct and concessions on cross-examination as emphasized above belie his continuing assertion of cognitive difficulty. When not specifically asked about an alleged memory problem by his attorney, [C]laimant's recall is remarkably good (e.g. changed medications, appointments, races his brother won two years prior) . . . .
>
> The physical complaints are all self-reported, subjective and [C]laimant has been reduced to one medication. [C]laimant's actions on the surveillance video are not those of one suffering from lightheadedness, dizziness or headaches. Rather, he gestures and converses normally with several individuals. . . . His regular attendance at these races, as well as his PCTC activities, do not support his original testimony of how his injury has adversely affected his activity. Directly and by inference, [C]laimant has admitted to computer usage, standing (at least for brief periods), sitting for long periods, driving and (alternatively) having access to public transportation.

*Id.* at 13-14. Apparently addressing the implied challenges to Dr. Fishman's opinion that Claimant demonstrated symptom magnification when the condition was not found in the past, the WCJ found it significant that the prior experts tested

7

Claimant for the condition five and one-half years before Fishman did; she further noted that the diagnosis of depression was largely based upon self-reporting, which she rejected as not credible. Finally, the WCJ noted that she found the testimony of the vocational experts credible. Accordingly, she granted the petition based upon the earning capacity detailed above ($320 per week), thereby reducing Claimant's weekly temporary total disability compensation to $20.41 a week. The Board affirmed.

On appeal, Claimant argues that Employer failed to demonstrate that his condition had changed since the last termination proceeding. According to Claimant, the only change recognized by Dr. Fishman was that in the nature of symptom magnification and/or malingering, which he suggests does not constitute a change in condition as a matter of law. Intertwined with his argument are references to prior neuropsychological tests results from 2001 and 2002, demonstrating his impairments, and various doctors' opinions, including that of Dr. Fishman, that testing indicates that he suffers from depression.[9] Finally, while not addressed as a separate issue, throughout his brief Claimant seems to imply that Dr. Fishman's results lack credibility or competency because he failed to perform the same tests that prior doctors performed and that testing conducted in conjunction with the prior termination petitions ruled-out malingering or symptom magnification.

Since our Supreme Court's decision in *Lewis v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 919 A.2d 922 (Pa. 2007), it is now well-settled that in order for an employer to modify a claimant's benefits

_____

[9] Dr. Fishman acknowledged that depression and post-concussive syndrome are co-morbidities.

8

under Section 413 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772,[10] the employer must demonstrate with medical evidence that the claimant's current physical condition has changed since the time of the last disability adjudication. *See generally Delaware Cnty. v. Workers' Comp. Appeal Bd. (Browne)*, 964 A.2d 29, 35 (Pa. Cmwlth. 2008).[11] The necessary change in condition has been defined as "any change in the claimant's physical well being that affects his ability to work." *Lewis*, 919 A.2d at 926. "It can be the total recovery from an illness or merely that the symptoms [have] subside[d]." *Id.* Thus, where modification based upon earning capacity is sought, it is not necessary to demonstrate that a claimant's diagnoses have changed since the last proceeding, but only that his symptoms have improved to the point where he is capable of gainful employment. Such is the situation is this matter.

Here, Claimant's subjective complaints were credited in the prior proceedings. In addition, the corresponding credited medical evidence indicated both valid test performance and results, and that Claimant demonstrated certain

---

[10] Section 413 provides, *inter alia*, that a claimant's benefits may be modified at any time upon petition and with proof that the claimant's disability has decreased or finally ceased.

[11] This facially straightforward statement of law does not necessarily reflect the complexities inherent in applying its underlying principle. For instance where, as here, denial of a termination petition is followed by a petition to modify, there may be no need to show an intervening change in physical condition for several reasons. First, a termination petition must be denied unless employer has shown full recovery, so such a denial does not necessarily mean that the claimant's condition at the time precludes any sort of work. Therefore, unless the issue of whether claimant remains totally disabled has actually been litigated and decided in the termination proceedings, it would seem that the appropriate point from which to measure change in condition would be the time of the initial claim petition, not that of the termination petition. Moreover, obviously, a modification (or suspension) petition may be based on other factors besides a change in physical condition, such as job availability or retirement from the work force. At all events, such considerations need not be addressed here since the evidence demonstrated a physical change from all prior proceedings.

9

deficits on the neuropsychological tests, which were consistent with the adjudicated injury. Although not necessary to resolution of the termination proceeding(s), the credited experts agreed that Claimant's condition rendered him unable to work. Contrary thereto, the credited medical expert in the current proceeding testified that he administered new tests (more than five years after the previous testing), which demonstrated inconsistent results, calling into question the validity of the tests and leading to a diagnosis of probable malingered neurocognitive dysfunction. Moreover, according to Dr. Fishman, the inconsistent test results also raised a question regarding the validity of Claimant's presentation. Based upon the new diagnosis and Claimant's test performance, the doctor opined that Claimant was capable of gainful employment. Contrary to Claimant's position, a diagnosis of malingering can be a sufficient change in condition as a matter of law to support a modification of benefits if it leads the medical expert to conclude that the claimant's disability or ability to work has changed.

In this particular case, the doctor's diagnosis and opinion of work ability is further supported by other evidence of record, namely Claimant's activities and the WCJ's personal observation of Claimant on three separate occasions, which suggested that Claimant's subjective complaints were either not accurate, not as severe as described or had improved since the last proceeding. Indeed, even Claimant's own treating physician approved a number of the jobs included in the survey and testified on cross-examination that his caveats or concerns would be addressed if the potential employer provided adequate training. *See* Taylor deposition at 44-48; R.R. at 450-54a. Moreover, according to Dr. Taylor: "The guy does indicate that he'd like to go back to work. I'd like to see him get back to work." *Id.* at 48; R.R. at 454a. Thus, both the credited medical

10

opinion and Claimant himself demonstrated that his current symptoms had improved to the point where he was capable of working in some capacity.

In reaching our conclusion, we note that any insinuations regarding Dr. Fishman's choice of tests to administer goes to the weight and credibility of his testimony, not its competency. In addition, the fact that other medical experts found valid test performance on different tests and no signs of malingering five years earlier does not preclude a current diagnosis of malingering or symptom magnification. Finally, whether Claimant suffers from depression is not dispositive; neither doctor opined Claimant's depression precluded returning to the work force.[12]

Based upon the foregoing, the Board is affirmed.[13]

---

**BONNIE BRIGANCE LEADBETTER,**
Judge

---

[12] There appears to be some dispute regarding whether depression is part of the adjudicated work injury. That issue need not be decided in the present context.

[13] After considering Employer's motion to strike Claimant's reply brief and the response thereto, those sections of the reply brief labeled "Issue I," Issue III," and "Issue IV" are stricken.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Gregory Simmons,              :
           Petitioner       :
                           :
            v.                :     No. 2168 C.D. 2013
                           :
Workers' Compensation Appeal     :
Board (Powertrack International),     :
           Respondent    :

# **O R D E R**

AND NOW, this 24th day of July, 2014, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby AFFIRMED.

AND FURTHER, after consideration of Respondent's motion to strike reply brief and the response thereto, the sections of the reply brief labeled "Issue I," "Issue III," and "Issue IV" are STRICKEN.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge