IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Courtney Cannon,                         :
                Petitioner     :
                           :
      v.                     :
                           :
General Motors, LLC         :
(Workers' Compensation     :
Appeal Board),            :   No. 1089 C.D. 2022
            Respondent     :   Submitted: May 5, 2023

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED: August 24, 2023

Courtney Cannon (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) September 12, 2022 order affirming WC Judge (WCJ) Robert Benischeck's (WCJ Benischeck) April 20, 2022 decision that granted General Motors, LLC's (Employer) Petition to Terminate WC Benefits (2021 Termination Petition). Claimant presents one issue for this Court's review: whether the Board erred by affirming WCJ Benischeck's finding that Employer established a change in Claimant's medical condition. After review, this Court affirms.

On May 17, 2013, while she was working as a floor supervisor for Employer, a forklift struck Claimant and she fell to the concrete floor. On February 21, 2014, Claimant filed a claim petition for WC benefits (Claim Petition). Claimant also filed a penalty petition, alleging therein that Employer failed to issue a Notice

of Compensation Denial, a Notice of Temporary Compensation Payable, or a Notice of Compensation Payable (NCP) within 21 days of her May 17, 2013 work injury (Penalty Petition). On March 21, 2014, Employer issued a medical-only NCP accepting Claimant's May 17, 2013 work injuries as a right thigh contusion, left elbow contusion/abrasion, and a left shoulder, low back, and neck strain and sprain. On May 4, 2015, WCJ Bonnie Callahan (WCJ Callahan) granted the Penalty Petition and granted the Claim Petition, in part, finding that Claimant sustained injuries on May 17, 2013, in the nature of a right thigh contusion, a left elbow abrasion, left shoulder, cervical, and lumbar strain and sprain, and a left rotator cuff tendonitis. However, because WCJ Callahan further found that Claimant failed to establish that she was entitled to wage loss benefits after January 30, 2014, she suspended Claimant's WC benefits as of that date.

On August 28, 2015, Employer filed a Petition to Terminate WC Benefits (2015 Termination Petition) alleging that Claimant completely recovered from her work injury as of August 12, 2015. Claimant filed a Petition to Reinstate WC Benefits (2015 Reinstatement Petition) alleging that her condition had worsened and sought indemnity benefits as of February 6, 2014. The petitions were assigned to WCJ Joseph McManus (WCJ McManus). On September 16, 2016, WCJ McManus denied the 2015 Termination Petition, and granted the 2015 Reinstatement Petition for wage loss benefits as of December 10, 2015, determining that Claimant's low back and left shoulder had worsened. Employer appealed to the Board. On July 26, 2017, the Board affirmed WCJ McManus' 2015 Termination Petition denial, and reversed the granting of the 2015 Reinstatement Petition because the record evidence did not support the conclusion that Claimant's condition had worsened. Claimant appealed to this Court, which affirmed the Board's order on July 17, 2018. *See Cannon v. Workers' Comp. Appeal Bd. (Gen. Motors, LLC)* (Pa. Cmwlth. No. 1168 C.D. 2017, filed July 17, 2018).

2

On May 10, 2021, Employer filed the 2021 Termination Petition, alleging that Claimant had fully recovered from her work injuries as of April 20, 2021. On November 18, 2021, WCJ Benischeck held a virtual hearing, during which Claimant testified that her low back and right leg were her primary problems. Claimant further stated that her leg was in "constant nerve pain." Reproduced Record (R.R.) at 29a. She also related that she was limited in sitting and becomes fatigued when standing. Claimant described that her left shoulder was "only bad when [she] overused it" or if she worked overhead. R.R. at 30a. According to Claimant, she could not sleep on her right side, her neck was stiff, and she sometimes had shooting pain in her left arm if she moved it a certain way. She recalled that, some days, she felt some soreness in her elbow. Claimant expressed that at no time since May 17, 2013, had she felt fully recovered.

Claimant also presented her July 16, 2021 deposition testimony. Therein, Claimant stated that she had treated at South Jersey Health and Wellness with Garo C. Avetian, D.O., Dr. Vernon,[1] and various chiropractors up until April 2019. She described that there was a gap in treatment from April 2019 through May 3, 2021, when she treated with Young Lee, M.D. (Dr. Lee), on her attorney's referral. Claimant acknowledged that she was only treating with Dr. Lee, but has not treated with him since May 2021 because she was awaiting authorization to have Magnetic Resonance Imaging (MRI). However, Claimant saw Barry S. Gleimer, D.O. (Dr. Gleimer), on November 4, 2021, on a referral from her attorney. Claimant also confirmed that she was not taking prescription medications. She claimed that she had carpal tunnel syndrome, and she woke at night with numbness in both hands. Her complaints at the time of her deposition were burning and tingling in her right leg all day, and pain in her right hip, low back, neck, left shoulder, left elbow, and

---

[1] Dr. Vernon's full name is not contained in the record. He is described therein as an "orthopedic doctor" at South Jersey Health and Wellness. R.R. at 215a.

wrist. She declared that she could sit only for 20-25 minutes, and standing "ma[de] everything hurt," R.R. at 89a, so she walked around. She stated that she could lift five pounds, and that she was able to cook and do some light cleaning.[2]

Employer submitted the deposition testimony of Marc Manzione, M.D. (Dr. Manzione), a board-certified orthopedic surgeon who examined Claimant on three occasions - May 6, 2014, August 12, 2015, and April 20, 2021.[3] With respect to his April 20, 2021 examination, Dr. Manzione recounted that Claimant's complaints were neck pain, bilateral shoulder pain (greater on the left), a feeling of pins and needles throughout her left hand, and right hip pain and low back pain, with pain and tingling radiating down the right leg. Dr. Manzione further stated that Claimant indicated that her complaints had not changed since the last examination. According to Dr. Manzione, Claimant reported that she had stopped chiropractic treatment in 2019, and was taking only over-the-counter medications.

Dr. Manzione related that his April 20, 2021 clinical examination of Claimant revealed that she had subjective tenderness consistent with non-work-related degeneration, but no objective signs of post-traumatic pathology. According to Dr. Manzione, Claimant stood and walked normally and climbed on and off the examination table without difficulty. He recalled that she had cervical complaints, but no neck spasm, and her range of motion was essentially normal. Dr. Manzione explained that Claimant complained of leg pain when he palpated her right greater trochanter, which was also non-physiologic since that area is far removed from any major peripheral nerve. He recollected that both of Claimant's shoulders showed some degenerative acromioclavicular pathology, but no rotator cuff or labrum

---

[2] Claimant also presented Dr. Lee's and Dr. Gleimer's office visit notes.
[3] Dr. Manzione testified in regard to the May 6, 2014 and August 12, 2015 examinations in prior litigation.

4

pathology. Dr. Manzione attributed Claimant's complaints of pins and needles in her left hand to carpal tunnel syndrome which is unrelated to her work injury.

Regarding Claimant's medical records, Dr. Manzione noted Claimant did not undergo treatment for two years until she saw Dr. Lee on May 3, 2021. Further, Dr. Manzione observed that Dr. Lee documented multiple objective abnormalities that were not present at Claimant's April 20, 2021 exam - just 13 days earlier. In addition, Dr. Manzione had previously reviewed Claimant's 2014 cervical MRI and 2013 lumbar MRI, found no post-traumatic pathology, and concluded that Claimant's spinal bulges and foraminal stenosis were degenerative.

Ultimately, Dr. Manzione concluded on April 20, 2021, that Claimant had fully recovered from the May 17, 2013 work injury. He explained that the "work injuries are various strains, sprains and abrasions and a rotator cuff tendonitis" from which Claimant recovered with no need for further medical treatment. R.R. at 129a. He opined that Claimant clearly had lumbar degenerative disease that causes her some lower radicular symptoms. However, according to Dr. Manzione, it was clear from her early imaging studies and electrodiagnostic tests that Claimant "did not sustain any injury that resulted in any structural or anatomic change or would have any impact on an otherwise natural clinical course of preexisting spinal degenerative disease." R.R. at 146a. Dr. Manzione described Claimant's first electromyography (EMG) from August 2013, as completely normal, and noted that her August 2014 EMG showed radiculopathy. Dr. Manzione opined that, if Claimant suffered a traumatic radiculopathy, it would have been detected on her first EMG, and the abnormalities noted on the 2014 EMG were from an underlying degenerative process.

On April 20, 2022, WCJ Benischeck granted the 2021 Termination Petition. Crediting Claimant's testimony and Dr. Manzione's opinion, the WCJ found that Claimant's condition had changed. WCJ Benischeck further determined

5

that Claimant had fully recovered from the work injury as of April 20, 2021, and adopted Dr. Manzione's opinion as credible. WCJ Benischeck rejected Claimant's, Dr. Lee's, and Dr. Gleimer's contrary testimony and reports. Claimant appealed to the Board. On September 12, 2022, the Board affirmed WCJ Benischeck's decision. Claimant appealed to this Court.[4]

Claimant contends that Employer failed to secure the requisite medical proof of a change in condition before proceeding with its second attempt to terminate WC benefits, and WCJ Benischeck instead relied solely on Claimant's testimony to find a change in condition. Thus, Claimant asserts that WCJ Benischeck and the Board erred by granting the 2021 Termination Petition.

Section 413(a) of the WC Act[5] states, in relevant part:

> A [WCJ] designated by the [D]epartment [of Labor and Industry (Department)] may, at any time, . . . terminate a[n] [NCP], . . . upon petition filed by either party with the [D]epartment, upon proof that the disability of an injured employe has . . . temporarily or finally ceased . . . . Such . . . termination shall be made as of the date upon which it is shown that the disability of the injured employe has . . . temporarily or finally ceased[.]

77 P.S. § 772.

This Court has explained:

> "To succeed in a termination petition, an **employer bears the burden of proving by substantial evidence that a claimant's disability ceased**, or any remaining conditions are unrelated to the work injury." *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008) (emphasis added). The burden is

---

[4] "[This Court's] review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated." *DiLaqua v. City of Phila. Fire Dep't (Workers' Comp. Appeal Bd.)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2021) (quoting *Bristol Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 595 n.6 (Pa. Cmwlth. 2019)).

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.1, 2501-2710.

substantial since **disability is presumed to continue unless and until proved otherwise**. *Giant Eagle, Inc. v. Workmen's Comp*[.] *Appeal Bd. (Chambers)*, . . . 635 A.2d 1123 ([Pa. Cmwlth.] 1993).

> In a case where the claimant complains of continued pain, this burden is met when an **employer's medical expert unequivocally testifies** that it is his opinion, within a reasonable degree of medical certainty, that the **claimant is fully recovered**, [and] can return to work without restrictions **and that there are no objective medical findings which either substantiate the claims of pain** or connect them to the work injury. **If the WCJ credits this testimony, the termination of** [WC] **benefits is proper**.

> *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, . . . 705 A.2d 1290, 1293 ([Pa.] 1997) (footnote omitted; emphasis added) . . . .

*Baumann v. Workers' Comp. Appeal Bd. (Kellogg Co.)*, 147 A.3d 1283, 1289-90 (Pa. Cmwlth. 2016).

> Moreover, our Supreme Court has held:

> > In order to terminate [WC] benefits on the theory that a claimant's disability has reduced or ceased due to an improvement of physical ability, **it is first necessary that the employer's petition be based upon medical proof of a change in the claimant's physical condition**. Only then can the [WCJ] determine whether the change in physical condition has effectuated a change in the claimant's disability, i.e., the loss of his earning power. Further, by natural extension **it is necessary that**, **where there have been prior petitions to** . . . **terminate** [WC] **benefits**, **the employer must demonstrate a change in physical condition since the last disability determination**.

7

*Lewis v. Workers' Comp. Appeal Bd. (Giles & Ransome, Inc.)*, . . . 919 A.2d 922, 926 ([Pa.] 2007) (emphasis added). Accordingly, "[An e]**mployer**'**s case [must] begin with the adjudicated facts found by the WCJ in [his/her previous] termination petition [denial] and work forward in time to show the required change**." *Folmer v. Workers' Comp. Appeal Bd. (Swift Transp.)*, 958 A.2d 1137, 1143-44 (Pa. Cmwlth. 2008) (emphasis added).

"The determination of whether a claimant's subjective complaints of pain are accepted is a question of fact for the WCJ." *Udvari*, 705 A.2d at 1293. Moreover, it is well established that "[t]he WCJ is the ultimate fact[-]finder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011). "The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000).

*Baumann*, 147 A.3d at 1290 (footnote omitted).

Noting that, in denying Employer's 2015 Termination Petition, WCJ McManus specifically rejected Dr. Manzione's opinion that Claimant had fully recovered from her work injury, Claimant argues:

Employer filed its [2021] Termination Petition, once again relying upon Dr. Manzione, who offered an opinion of full recovery for a third time.[6] []R.R. at []1a-[]3a[].

As a result of [] Employer's previous failure to terminate [WC] benefits, [] Employer was required to secure a medical opinion showing a change in condition from the previous adjudication to prevail on its [2021] Termination Petition.

However, Dr. Manzione's medical report and deposition testimony were **silent on the issue of whether he found**

---

[6] Claimant explains that "Employer relied on the medical opinion of [Dr. Manzione] to defend against the Claim Petition and WCJ Callahan specifically rejected Dr. Manzione's opinion of full recovery." Claimant Br. at 8.

8

**a change in Claimant's condition since the prior termination proceedings before WCJ McManus**. Rather, **Dr. Manzione simply confirmed that based on the history**, **the review of the records**, **the testimony**, **his examination**, **the diagnostic film and records**, **Claimant had fully recovered from all of the orthopedic injuries that occurred on May 17**, **2013** . . . , **similar to his prior testimony** offered before WCJs McManus and Callahan.

Claimant Br. at 14 (citation omitted; emphasis added).

> This Court has recognized that the evidence necessary to prove a change since a prior adjudication "will be different in each case." *Folmer*, 958 A.2d at 1144. "[**B**]**y accepting the employer's medical evidence of full recovery as credible**, **a WCJ could properly make a finding that the employer has met the standard set forth in** *Lewis* [**of**] **a change in** [**the c**]**laimant's condition**." *Del*[.] *Cnty. v. Workers' Comp. Appeal Bd. (Browne)*, 964 A.2d 29, 35 (Pa. Cmwlth. 2008) (emphasis added)[.] Moreover, although the WCJ's finding cannot be based solely upon evidence that pre-dates the previous adjudication, . . . it **may be based upon a review of such evidence plus a post-adjudication examination**. Finally, "it is not necessary [for the employer] to demonstrate that a claimant's diagnoses have changed since the last proceeding, but only that **his symptoms have improved to the point where he is capable of gainful employment**." *Simmons v. Workers' Comp. Appeal Bd. (Powertrack Int'l)*, 96 A.3d 1143, 1149 (Pa. Cmwlth. 2014) (emphasis added). This Court has declared that a **change** sufficient to satisfy the *Lewis* requirement **exists if there is a lack of objective findings to substantiate a claimant's continuing complaints**.

*Baumann*, 147 A.3d at 1291 (citations and footnotes omitted).

> Here, on review, the Board observed:

> WCJ [Benischeck] concluded that Claimant's condition has changed in over five years since the last adjudication based on the testimony of Claimant and Dr. Manzione. By accepting Dr. Man[zione's] opinion of full recovery, as well as his testimony that there were no objective findings in relation to the work injury, [] WCJ [Benischeck] did not

9

err in finding that [Employer] met the change in condition standard. Dr. Man[zione] based his opinion in part on the latest April 20, 2021 exam[ination] and the history of Claimant's treatment since his prior evaluation on August 12, 2015, which were both done after August 12, 2015, the first date [Employer] alleged full recovery. Dr. Man[zione] testified that "in connection with my most recent examination [on April 20, 2021,] I did review records primarily from the end of 2015 going through April of 2019." [R.R. at 120a]. Although [] WCJ [Benischeck] stated "that [] Claimant's condition has changed based on an analysis of Claimant's testimony[,]" it is clear in the decision and the record that this statement is not all-inclusive but is specific to the credibility determination as to Claimant. Thus, Claimant's argument that the finding of a change in condition is based on her testimony alone is without merit as [] WCJ [Benischeck] also relied on the testimony of [Employer's] expert Dr. Man[zione]. Because the credited testimony of Dr. Man[zione,] as well as [] WCJ[ Benischeck's] observation of Claimant[,] constitute substantial, competent evidence supporting a change in condition since the September 16, 2016 [d]ecision, the [2021] Termination Petition was properly granted.

R.R. at 20a-21a (citations and footnotes omitted). This Court discerns no error in the Board's reasoning. Accordingly, the Board properly affirmed WCJ Benischeck's finding that Employer established a change in Claimant's medical condition.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

Judge Fizzano Cannon did not participate in the decision in this matter.
Judge Dumas did not participate in the decision in this matter.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Courtney Cannon,                   :
             Petitioner         :
                              :
      v.                         :
                              :
General Motors, LLC          :
(Workers' Compensation      :
Appeal Board),              :     No. 1089 C.D. 2022
            Respondent     :

## O R D E R

AND NOW, this 24th day of August, 2023, the Workers' Compensation Appeal Board's September 12, 2022 order is affirmed.

_____

ANNE E. COVEY, Judge