IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kathryn A. Lawry,                         :
                      Petitioner       :
                                :
            v.                      :
                                :
County of Butler (Workers'               :
Compensation Appeal Board),              :    No. 593 C.D. 2022
                   Respondent       :    Argued: February 6, 2024


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION BY
JUDGE COVEY                           FILED:  March 6, 2024


        Kathryn A. Lawry (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) May 17, 2022 order reversing WC Judge (WCJ) Robert Steiner's (WCJ Steiner) decision that denied the County of Butler's (Employer) Petition to Terminate WC benefits (Termination Petition).  Claimant presents one issue for this Court's review: whether the Board's decision violated long-standing and fundamental WC principles, and, therefore, should be reversed.  After review, this Court reverses.

        On June 24, 2009, Claimant suffered a work-related injury which Employer accepted as a right thumb strain/sprain.  On July 26, 2011, WCJ Steiner expanded the injury description to include right ulnar collateral ligament tear and reflex sympathetic dystrophy (RSD)/complex regional pain syndrome (CRPS).  Relevant to the instant appeal, on February 13, 2019, WCJ Steiner denied Employer's prior Termination Petition, which alleged a full recovery date as of

March 27, 2018.[1]  In denying the prior Termination Petition, WCJ Steiner rejected Steven Thomas M.D.'s (Dr. Thomas) opinion that as of March 27, 2018, Claimant had no objective or physical findings on examination to support the continuing RSD/CRPS diagnosis and that Claimant's pain complaints were from malingering. Instead, WCJ Steiner found that Employer failed to prove that Claimant's physical condition had changed since a prior June 24, 2015 decision.  WCJ Steiner found David A. Provenzano, M.D. (Dr. Provenzano) and Ashraf Razzak, M.D. (Dr. Razzak) to be credible that Claimant continued to have physical signs and symptoms of RSD/CRPS, and accepted Dr. Provenzano's assessment that Claimant had CRPS I of the right upper limb with pain in the right hand, and that she met the Budapest criteria for CRPS of the right hand as a result of his March 23, 2018 examination. WCJ Steiner further noted that, from his own personal observation of Claimant at the hearing, Claimant had some swelling and redness with skin mottling, with little to no hair on the back of Claimant's right hand.

On July 7, 2020, Employer filed the instant Termination Petition alleging that Claimant fully recovered from her June 24, 2009 work injury as of June 17, 2020.  WCJ Steiner held hearings on August 5 and September 18, 2020, and January 20 and March 16, 2021.  On July 1, 2021, WCJ Steiner denied Employer's Termination Petition.[2]  WCJ Steiner ruled that Employer met its burden of proving that Claimant fully recovered from her right thumb strain/sprain and right ulnar collateral ligament tear.  However, WCJ Steiner determined that Employer failed to meet its burden of proving that Claimant fully recovered from her RSD/CRPS.  WCJ

---

[1] Employer filed four Termination Petitions.  The first Termination Petition sought relief as of April 23, 2010, which WCJ Steiner denied on July 26, 2011.  The second Termination Petition sought relief as of May 27, 2013, which WCJ Alfred Benedict denied on June 24, 2015.  The third Termination Petition sought relief as of March 27, 2018, which WCJ Steiner denied on February 13, 2019.  The instant fourth Termination Petition sought relief as of June 17, 2020, which WCJ Steiner denied on July 1, 2021.

[2] Claimant appeared pro se before WCJ Steiner.

2

Steiner explained that in *Kesselring v. Workers' Compensation Appeal Board (Pocono Medical Center and Qual-Lynx)* (Pa. Cmwlth. No. 1786 C.D. 2019, filed Jan. 22, 2021), this Court stated that the gold standard for diagnosing RSD or CRPS is the Budapest criteria, and Robert Goitz, M.D. (Dr. Goitz) gave his opinion without specifically addressing it, and without any evidence of any recent objective diagnostic tests to determine whether Claimant had continuing RSD/CRPS.[3] Employer appealed to the Board which reversed WCJ Steiner's decision denying the Termination Petition.[4] The Board explained that WCJ Steiner's determination that Dr. Goitz's testimony, that Claimant fully recovered from RSD/CRPS, was not credible, based on Dr. Goitz's failure to reference the Budapest criteria, and was arbitrary and capricious. Claimant appealed to this Court.[5]

> Initially, the Pennsylvania Supreme Court has instructed:
>
> In order to terminate benefits on the theory that a claimant's disability has reduced or ceased due to an improvement of physical ability, it is first necessary that the employer's petition be based upon medical proof of a change in the claimant's physical condition. Only then can the [WCJ] determine whether the change in physical condition has effectuated a change in the claimant's disability, i.e., the loss of his earning power. Further, by natural extension **it is necessary that**, **where there have been prior petitions to** modify or **terminate benefits**, **the employer must demonstrate a change in physical condition since the last disability determination**.

---

[3] However, the *Kesselring* Court merely stated that "Dr. Ruht's assessment was based on the Budapest criteria, which he claimed is the gold standard in the industry for diagnosing RSD or CRPS." *Id.*, slip op. at 16 n.15. It did not outline the Budapest criteria and/or discuss its importance to RSD/CRPS.

[4] Claimant acted pro se before the Board.

[5] "Our standard of review of a Board order limits us to determining whether the necessary findings of fact are supported by substantial evidence, whether an error of law or a violation of Board procedure has occurred, or whether constitutional rights were violated." *Essix Holdings, LLC v. Dengel (Workers' Comp. Appeal Bd.)*, 276 A.3d 830, 833-34 (Pa. Cmwlth. 2022).

3

*Lewis v. Workers' Comp. Appeal Bd. (Giles & Ransome, Inc.)*, 919 A.2d 922, 926 (Pa. 2007) (emphasis added).

> "The determination of whether a claimant's subjective complaints of pain are accepted is a question of fact for the WCJ." *Udvari* [*v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*], 705 A.2d [1290,] 1293 [(Pa. 1997)]. Moreover, it is well established that "[t]he WCJ is the ultimate fact[-]finder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011). "**The WCJ**, **therefore**, **is free to accept or reject**, **in whole or in part**, **the testimony of any witness**, **including medical witnesses**." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000).

*Baumann v. Workers' Comp. Appeal Bd. (Kellogg Co.)*, 147 A.3d 1283, 1290 (Pa. Cmwlth. 2016) (emphasis added).

Claimant argues that the Board violated long-standing and fundamental WC principles by overturning WCJ Steiner's credibility determination of Dr. Goitz. Claimant further contends that in order to satisfy *Lewis*, Dr. Goitz was required to look to the Budapest criteria, address each of its components, and state what component or components had changed. Claimant asserts that because Dr. Goitz did not do that, Employer did not satisfy *Lewis*. Employer rejoins that WCJ Steiner erred by rejecting Dr. Goitz's full recovery opinion relative to RSD/CRPS based on the fact that Dr. Goitz had not assessed Claimant using the Budapest criteria.

This Court has explained:

> While many cases since *Daniels* [*v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043 (Pa. 2003),] have addressed the adequacy of the reasons set out by the WCJ in support of his or her credibility determination, we have not clearly addressed the *standard* by which we review such reasoning.

4

While many petitioners challenging an adverse credibility determination would suggest that we review each and every component of the WCJ's reasoning for substantial evidence and reverse or remand if we can find any flaw, we do not believe the reasoned decision requirement takes us so far from the traditional notions of the deference owed credibility determinations. Indeed, the *Daniels* [C]ourt cited with approval this [C]ourt's opinion in *PEC Contracting Engineers v. Workers*[*'*] *Comp*[*ensation*] *Appeal* [*Board*] *(Hutchison)*, 717 A.2d 1086 (Pa. Cmwlth. 1998), which stated:

> The requirement that the WCJ adequately explain his reasons for accepting or rejecting evidence protects the parties to a decision by ensuring that a legally erroneous basis for a finding will not lie undiscovered. For instance, if a WCJ rejects evidence based on an erroneous conclusion that testimony is equivocal, or that the evidence is hearsay or for some other reason incompetent, such legal error will be evident and can be corrected on appeal.

> However, **the WCJ's prerogative to determine the credibility of witnesses and the weight to be accorded evidence has not been diminished** by the amendments to Section 422(a) [of the WC Act].[6] **Such determinations are binding on appeal unless made arbitrarily and capriciously**. *Ryan v. Workers*[*'*] *Comp*[*.*] *Appeal* [*Bd.*] *([Cmty.] Health [Servs.])*, . . . 707 A.2d 1130 ([Pa.] 1998).

*PEC Contr*[*acting*] *Engs.*, 717 A.2d at 1088-89.

*Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14, 18-19 (Pa. Cmwlth. 2008) (emphasis added).

Here the Board opined: "WCJ [Steiner] capriciously disregarded competent medical evidence in rendering his finding that [Employer] had not met its

_____

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

5

burden of proving its entitlement to a termination of [WC] benefits as of June 17, 2020." Reproduced Record (R.R.) at 295a. The Board explained:

> WCJ [Steiner] credited Dr. Goitz's opinion as to Claimant's full recovery from her right thumb sprain/strain and ulnar collateral ligament tear. However, [] **WCJ [Steiner] rejected Dr. Goitz's opinion as not credible concerning Claimant's full recovery from her work-related RSD/CRPS diagnosis. In so doing, [] WCJ [Steiner] relied upon the** "**Budapest [c]riteria**" **used by Dr. Ruht in** *Kesselring*, wherein Dr. Ruht determined that the employee did not meet the criteria for an RSD/CRPS diagnosis. In a footnote to the opinion, the [*Kesselring* C]ourt noted that "Dr. Ruht's assessment was based on the Budapest [c]riteria, which he claimed is the gold standard in the industry for diagnosing RSD or CRPS." *Kesselring*[, slip op.] at 8. Other than this limited reference to the Budapest [c]riteria in this footnote, the [*Kesselring* C]ourt did not outline the Budapest [c]riteria and/or discuss its importance to RSD/CRPS. It is unclear from this reference whether the Budapest [c]riteria are useful only in diagnosing RSD/CRPS, or whether they are also used in a determination of full recovery from the same. Moreover, it is unclear what level of standardization the Budapest [c]riteria have reached, if any, among the medical community concerning RSD/CRPS diagnoses and recovery determinations. Thus, [**the Board] determine**[s **that it was erroneous for** [] **WCJ [Steiner] to adopt another doctor's medical opinion, that of Dr. Ruht, for application to the instant matter.** Dr. Ruht was not involved in Claimant's treatment of RSD/CRPS, nor is he otherwise involved in this case. While Dr. Ruht may consider the Budapest [c]riteria as a gold standard for RSD/CRPS cases, **it is erroneous for** [] **WCJ [Steiner] to arbitrarily determine that Dr. Ruht's opinion amounts to a legal standard for RSD/CRPS diagnoses and determinations of full recovery.** Thus, [] **WCJ [Steiner]'s determination that Dr. Goitz was not credible that Claimant fully recovered from RSD/CRPS based on Dr. Goitz's failure to reference the Budapest [c]riteria was arbitrary and capricious.**

R.R. at 296a-297a (emphasis added).

6

A review of the transcript, most significantly, Dr. Goitz's deposition, reveals that notwithstanding WCJ Steiner's misstatement concerning the Budapest criteria, it is clear that the WCJ's credibility determination was not arbitrary and capricious. Specifically, Dr. Goitz based his conclusion that Claimant fully recovered from RSD/CRPS on the fact that Claimant did not have "typical findings" which include "loss of motion, atrophy from nonuse, skin changes, hair changes[, and] temperature changes[, which appear] **in the early phases** of RSD." R.R. at 150a (emphasis added). He also based his conclusion on a surveillance video, which in his opinion showed: "[Claimant] walked with a normal gait, moving her right hand while she talks [sic] in a normal pattern, holding a cell phone with a right hand and carrying a tray, all indicating normal use of her hands." R.R. at 160a. When asked, "after reviewing the medical records and the surveillance reports that you had at the time . . . , as well as taking her history, [and] performing the physical examination," did you reach an opinion regarding Claimant's work injury status? Dr. Goitz replied: "overall it appeared . . . at the time of my exam, she had no evidence of ongoing RSD or CRPS." R.R. at 160a.

When asked if he reviewed all the records, surveillance, and Claimant's testimony that were provided between his independent medical exam and his deposition, and if they supported his opinions, Dr. Goitz replied: "Yes, **especially the further video surveillance**." R.R. at 164a (emphasis added). The reason for which, he explained: "Just that it continued to show on multiple occasions a normal use of the right hand with no evidence of modifications of her activities, and using her hand in very normal patterns, using it to use and move multiple objects." R.R. at 164a. However, WCJ Steiner found, which was his prerogative, that "the investigative reports and [digital video disc (]DVD[)] surveillance video of Claimant on January 24, 2020[,] July 2, 2020[,] July 29, 2020[,] and August 4, 2020[,] were not persuasive in that they only established minimal [] use of her right hand with

7

lifting less than [one] pound, and for which Dr. Goitz relied on heavily to support his physical examination and opinions, which I hereby reject." R.R. at 281a.

Further, Claimant presented Anuradha Anand, M.D.'s (Dr. Anand) Progress Notes dated July 1, 2020, and July 29, 2020,[7] which provided the results of Dr. Anand's examinations of Claimant, including: "tender along R[ight] wrist, swelling and limited [range of motion]," R.R. at 111a, 114a, for which Dr. Anand assessed Claimant with "CRPS," *id*., and prescribed pain medication. *See id*. WCJ Steiner "accept[ed] [Dr. Anand's records] as credible, convincing and persuasive," which was within his province. R.R. at 281a. Given WCJ Steiner's extensive knowledge of the case, rejection of the investigative reports and DVD surveillance video, and the acceptance of Dr. Anand's records, WCJ Steiner's rejection of Dr. Goitz's testimony regarding Claimant's full recovery of RSD/CRPS was not arbitrary and capricious.

The *Casne* Court explicated:

[T]he arbitrary and capricious standard cited in *PEC Contracting Engineers* is not only the traditional standard applied to credibility determinations, but is strikingly similar in substance to the prohibition in Section 422(a) [of the WC Act] of rejecting evidence for reasons that are irrational. These concepts provide an appropriate paradigm for our analysis. **Credibility determinations are more than a series of individual findings**. Rather, **they represent the evaluation of a total package of testimony in the context of the record as a whole**, **and reflect subtle nuances of reasoning that may not be fully articulated**, **nor even fully appreciated**, **by the fact-finder**. Accordingly, we believe that, even where a WCJ has based a credibility determination on a cold record, **substantial deference is due**. **We must view the reasoning as a whole and overturn the credibility**

_____

[7] WCJ Steiner accepted and admitted Dr. Anand's July 1 and July 29, 2020 Progress Notes and curriculum vitae into evidence without objection from Employer. *See* R.R. at 31a-32a.

> **determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational**.

*Casne*, 962 A.2d at 19 (emphasis added; footnote omitted).

Here, WCJ Steiner was familiar with the case, as well as Claimant, as this case was before him numerous times, two of which were specifically to decide Employer's Termination Petitions during which Claimant appeared in person, as she did in the instant Termination Petition. This Court acknowledges that WCJ Steiner stated in finding of fact (FOF) 24:

> I specifically reject any testimony of Dr. Goitz that Claimant has fully recovered and does not require any additional medical treatment for Claimant's work-related injury of CRPS/RSD. **I additionally note** for the persuasive value only that in the unreported Commonwealth Court [d]ecision of January 22, 2021[,] in [*Kesselring*,] the gold standard for diagnosing RSD or CRPS is based on the Budapest [c]riteria, which Dr. Goitz did not specifically address other than some of his personal observations and his viewing of the DVD surveillance videos without any evidence of any recent objective diagnostic tests to determine whether or not Claimant has continuing CRPS/RSD. Therefore, for all of these reasons, [Employer's] Termination Petition is denied and dismissed.

R.R. at 281a; WCJ Steiner Dec. at 12 (FOF 24) (emphasis added). However, that is just a portion of FOF 24. Before the above-stated quote, WCJ Steiner explained, relative to the law:

> [The employer] has the burden of proof in a Termination Petition to demonstrate by substantial medical evidence that all disability has ceased and terminated. [*See*] *Battiste v.* [*Workmen's Comp. Appeal Bd.*] *(Fox Chase Cancer* [*Ctr.*]*)*, 660 A.2d 253 (Pa. Cmwlth. 1995). This burden is considerable because disability is presumed to continue until demonstrated otherwise. [*See*] *Giant Eagle*[*, Inc.*] *v.* [*Workmen's Comp. Appeal Bd.*] *(Chambers)*, 635 A.2d

9

1123 (Pa. Cmwlth. 1993). [An e]mployer seeking to terminate [WC] benefits must disprove [the c]laimant's existing, continuing right to benefits for injury already established to be work related, while [the c]laimant has no burden to prove anything at all. [*See*] *Campbell v.* [*Workers' Comp. Appeal Bd.*] *(Antietam Valley Animal Hosp*[.]*)*, 705 A.2d 503 (Pa. Cmwlth. 1998). A WCJ can give more credence to a [c]laimant's testimony regarding incapacitating pain than to a doctor's testimony. [*See*] *Victor's Jewelers v.* [*Workmen's Comp. Appeal Bd.*] *(Bergelson)*, 604 A.2d 1127 (Pa. Cmwlth. 1992). Also, a [c]laimant's complaints of pain, even without evidence of an anatomical cause, are sufficient to support a finding of continuing disability. [*See*] *JAB Enter*[*s.*]*, Inc. v.* [*Workmen's Comp. Appeal Bd.*] *(Haehn)*, 470 A.2d 210 (Pa. Cmwlth. 1984). Where a Termination Petition has been denied and the employer again seeks a termination as of a later date, the [employer] must show that a change in physical condition has occurred since the preceding disability determination as held in the case of *Lewis* . . . .

R.R. at 280a; WCJ Steiner Dec. at 11 (FOF 24).

WCJ Steiner continued to discuss, in FOF 24, the facts of the instant Termination Petition:

I would note that this is [Employer's] fourth (4) Termination Petition as referenced in [FOF] 6. Also, I would note that in my decision of February 13, 2019, entered into evidence as Judge's Exhibit 1 in the instant proceedings, in which I denied [Employer's] Termination Petition, I had specifically accepted as credible, convincing[,] and persuasive the medical evidence of Dr. Provenzano and Dr. Razzak that Claimant continued to have physical signs and symptoms of RSD/[CRPS] and specifically accepted Dr. Provenzano's assessment that Claimant has [CRPS] I of the right upper limb with pain in the right hand and that she met the Budapest [] [c]riteria as a result of his office examination of March 23, 2018[,] as well as Dr. Razzak's March 14, 2018 physical examination and findings. Additionally in that decision, I had found Claimant did have signs of some symptom magnification, which I continue to find in the instant litigation, but note that **the investigative reports and**

10

**DVD surveillance video of Claimant on January 24, 2020[,] July 2, 2020[,] July 29, 2020[,] and August 4, 2020[,] were not persuasive in that they only established minimal [] use of her right hand with lifting less than [one] pound, and for which Dr. Goitz relied on heavily to support his physical examination and opinions, which I hereby reject.** I accept as credible the explanations given by Claimant regarding a DVD surveillance video such as her using a cell phone with the right hand and emptying a small plastic tray with only papers on it at a fast[-]food restaurant and that she has good and bad days as far as the use of her right hand. Additionally, although **much of Claimant's medical evidence** was out of date and irrelevant to Claimant's medical condition as of June 17, 2020, it **was sufficient to establish continued complaints of pain of the right hand and diagnosis of CRPS/RSD. I specifically accept as credible, convincing[,] and persuasive the medical records of Dr. Anand.** However, [Employer] is granted a termination of Claimant's work injuries of right thumb strain/sprain and right ulnar collateral ligament tear, from which Claimant has fully recovered as not having any additional medical treatment or care for those conditions and for which **I accept in part, the testimony of Dr. Goitz that Claimant has recovered from those conditions and does not require any additional medical treatment**.

R.R. at 280a-281a; WCJ Steiner Dec. at 11-12 (FOF 24) (emphasis added).

Clearly, WCJ Steiner's partial credibility determination of Dr. Goitz was not based on Dr. Ruht's medical opinion as the Board declares. Rather, it was based on, *inter alia*, his extensive knowledge of the case from presiding over previous Termination Petitions, Dr. Goitz's heavy reliance on surveillance videos which he used to support his physical examination and opinions, Dr. Anand's credible, convincing, and persuasive medical records, and Claimant's medical evidence. Although WCJ Steiner may have misstated the *Kesselring* Court's footnote regarding the Budapest criteria, viewing WCJ Steiner's reasoning as a whole, this Court cannot hold that the credibility determination of Dr. Goitz is

11

arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational. Accordingly, the Board erred by reversing WCJ Steiner's decision.

For all of the above reasons, the Board's order is reversed.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kathryn A. Lawry,
                Petitioner

           v.

County of Butler (Workers'
Compensation Appeal Board),
                Respondent

:
:
:
:
:
:
:
:
:    No. 593 C.D. 2022
:

## O R D E R

AND NOW, this 6th day of March, 2024, the Workers' Compensation Appeal Board's May 17, 2022 order is reversed.

_____
ANNE E. COVEY, Judge